Flagg v. Thurber.

[Monroe General Term, September 2, 1851. *Welles, Selden* and *Johnson,* Justices.]

———•◦•———

Flagg, comptroller, &c. *vs.* Thurber, Munger, and 31 others.

It is a general rule that where the owner of land mortgages it to secure the payment of a debt, and afterwards sells the equity of redemption, subject to the lien of the mortgage, and the purchaser assumes the payment of the mortgage, as a portion of the purchase money, the latter becomes personally liable for the payment of the debt of the former to the holder of the mortgage, in the first instance; and if the mortgagor is compelled to pay it, he can recover it from the purchaser of the equity of redemption.

In such a case the mortgagor and purchaser stand in the relation of principal and surety; the latter as surety for the former, to the extent of the mortgage debt.

Where a mortgage, given to a bank, is assigned to and held by the comptroller, under the 9th section of the act of April, 1838, " to authorize the business of banking," his right to institute proceedings for the foreclosure or collection of such mortgage is necessarily incidental to his position and relations, although the statute contains no specific directions to that effect.

Rehearing of so much of a decree made at special term before Selden, justice, as held the defendant Perley Munger personally liable to the complainant to the extent of $1700, and interest, &c. upon a certain contingency; and of so much of said decree as refused said Munger his costs of the defense. The bill was filed in March, 1847, to foreclose a mortgage given by the defendant Thurber and wife to Anson Thomas, president of the Central Bank of New-York, dated April 1, 1839, to secure the sum of $6500 and interest, in one year, to Thomas, his successors and assigns, according to the condition of a bond executed by Thurber to Thomas of the same date with the mortgage. The mortgage being duly acknowledged, was recorded

in the clerk's office of Monroe county on the 8th of April, 1839. The mortgaged premises were situated in the city of Rochester, and embraced 114 city lots, comprising about 25 acres of land. On the 27th of April, 1849, the mortgage was assigned by Thomas to Bates Cook, then comptroller of the state of New-York, under the provisions of the act to authorize the business of banking, passed April 18, 1838. The plaintiff held the office of comptroller at the time of the commencement of the suit, and the action was continued in his name by stipulation between the parties. The defendants, besides Philip Thurber and wife, (31 in number,) were made parties as having or claiming some interest in the mortgaged premises, or some part thereof, as purchasers, mortgagees, or otherwise; which interests, if any, the bill charged had accrued subsequent to the lien of the mortgage made to Thomas, and were subject thereto.

On the 15th day of June, 1842, the defendant Philip Thurber conveyed to the defendant Perley Munger, for the consideration of $19,765, as expressed in the conveyance, a large number of city lots in the city of Rochester, (about 100,) a portion of which were embraced in the mortgage in question to Thomas. This conveyanne concluded as follows : " This conveyance is made subject to one half of a mortgage executed by Philip Thurber and wife to Anson Thomas, president of the Bank of Central New-York, for $6500, dated 1st April, 1839, recorded in Monroe county clerk's office, in liber 25, mortgages, page 169; also subject to a mortgage from said Thurber and wife to William Gay for $2500, dated 1st January, 1841, recorded in said office in liber 29 of mortgages at page 286; which the said party of the second part assumes to pay, and which is part of consideration money mentioned above." The answer of Perley Munger stated, among other things, that in the month of June, 1842, he, the said Munger, entered into a negotiation with Philip Thurber for the purchase of a large number of city lots in the city of Rochester, a portion of which were a part of the mortgaged premises in question; that on the faith of the representations made to him by Thurber in regard to the number, location and size of said lots, he agreed to purchase the same, and assume the payment of

one half of the mortgage to Thomas, as part of the purchase money, in case the representations should prove correct in all particulars, after an examination and survey of the lots. That before a reasonable time for an examination and survey, Thurber executed a deed of the land, and contrary to the wishes or consent of Munger, procured it to be recorded. That soon after the commencement of the negotiation for the purchase, Munger learned that there were large deficiencies in the land which was the subject matter of the sale, and especially among the lots covered by said mortgage, contrary to the representations of Thurber, in consequence of which its value was much less than it had been represented to him. That on communicating this fact to Thurber, it was agreed between him and Munger, that the negotiation should be kept open until the definite ascertainment of the extent of such deficiencies, and that the same should be deducted from the purchase money, and particularly, that Munger should not be obliged to pay any portion whatever of said mortgage until after such ascertainment, and then only upon such terms as should in the mean time have been agreed upon between them. That upon a survey being made, it appeared that the deficiency in the whole purchase was 70,000 feet, about fifty-thousand of which were upon the mortgaged lots, and the entire deficiency was settled by Thurber and Munger as amounting in value to $1550; which was to be deducted from the purchase money. That upon this arrangement the negotiation was concluded, by the execution and delivery by Thurber to Munger of a certain instrument under seal, which was a bond in the penalty of $3100, and conditioned for the payment of $1550, with semi-annual interest from July 1st, 1842, as follows : If the holder of the Thomas bond and mortgage should, within five years from July 1, 1842, request of either Thurber or Munger any payment on the same, Thurber was forthwith to pay to Munger $\frac{1550}{3250}$ of such sum, and in the same proportion at any other requests by the holder of the said bond and mortgage, until Thurber should thus have paid the whole sum of $1550, with interest as aforesaid. If Thurber should not have paid the whole sum of $1550, and interest by July 1, 1844, he was to pay the balance

to Munger in three annual payments from that time upon demand of the same by Munger. It provided further, that in case Thurber failed to make the payments in the manner prescribed, Munger was not to be obligated to pay any portion of the said bond and mortgage, any clause in any deed theretofore existing to the contrary notwithstanding; and the whole sum of $1550 was declared wholly due in case of any default by Thurber. This instrument was duly proved, and evidence was given tending to establish the truth of the allegations of the answer, of the facts and transactions which led to the giving it. Evidence was given of various other matters not necessary to be stated here. The court at special term directed a decree of foreclosure, with various special provisions, and among others, charging the defendant Munger personally with the payment of $1700, and interest, from the 1st day of July, 1842.

*G. G. Munger*, for the defendant Perley Munger.

*Wm. J. Bacon*, for the plaintiff.

*By the Court*, WELLES, J. It is contended on the part of the defendant Munger, that the plaintiff has no proper title to sustain the action, on the ground that the mortgage in question was assigned to and held by him as comptroller, under the act entitled " An act to authorize the business of banking," passed April 18, 1838, (*Laws of* 1838, *ch.* 260, *p.* 245,) in pursuance of the 9th section of that act; there being no provision in the act, or in any of its amendments, authorizing or requiring the comptroller in any event to institute proceedings for the foreclosure or collection of the mortgage. And that even if an action can in any event be sustained by the comptroller for the collection of the mortgage, it cannot be done consistently with the 12th section of the act; until after a failure of the Bank of Central New-York to redeem its circulating notes; which is not proved in this case.

This position, I think, cannot be maintained. The mortgage was absolutely transferred to the comptroller, and he had no

right to surrender it to the bank for any purpose, unless upon receiving other approved bonds and mortgages of equal amount. (§ 9.) The proposition contended for might operate to secure a mortgage debtor against paying his debt during the whole time of the existence of the banking association, which, in some cases, is 1000 years, notwithstanding any necessity which might exist to collect, growing out of the depreciation of the security, in any respect, and might thereby involve the loss of a large portion of it.

I think the right to collect by the comptroller, moneys due upon such securities, is necessarily incidental to his position and relations, although the statute contains no specific directions to that effect.

The next and principal point of the defendant Munger is, that he is not personally liable as charged in the bill, nor as adjudged in the decree.

The decree directed a sale of the mortgaged premises in the following order: 1st. That portion not sold to any of the defendants; 2d. The twenty lots embraced in the mortgage which were contained in the sale by Thurber to Munger; 3d. That portion of the premises conveyed by Thaddeus Spencer and wife and the heirs of William Gay to Harvey Bissell, which were included in the mortgage in question, (the same having been, after the execution of the mortgage in question, conveyed by Thurber to Gay in his lifetime;) and, 4th. The residue of the mortgaged premises, and which had been conveyed to the other defendants by Thurber, in the inverse order of alienation. The decree also ordered that the defendant Munger should pay the plaintiff, or his solicitors, any balance of the sum of $1700, with interest from the first day of July, 1842, not realized from the sale of the twenty lots conveyed to him, and constituting the second class in the order of sale, or so much of such balance as should be equal to any sum remaining unpaid of the debt, interest and costs of the plaintiff, after the completion of the sale therein ordered. And finally, that if the proceeds of the sales, together with the amount directed to be paid by Munger, should be in-

Flagg v. Thurber.

sufficient to pay the plaintiff's debt, interest and costs, the deficiency should be paid by the said Philip Thurber.

It is the foregoing provision of the decree which charges the defendant Munger with personal liability of which he complains. Without going into a discussion of the evidence on the question of the time of the delivery of the deed by Thurber to Munger, I shall assume that it was accepted by Munger, upon the former executing to him the instrument of the 21st of November, 1842, and not before. The testimony satisfies me that the purchase by Munger was not completed until that time; and I think his personal liability to pay any portion of the mortgage debt must depend very much, if not entirely, upon the deed which he received from Thurber, regarding it delivered at that time, in connection with the said instrument of the 21st November. By the former, Munger assumed the payment of one half of the mortgage debt, and by the latter, his liability was in substance reduced to $1700, with interest from the first day of July, 1842.

It is a general principle that where the owner of land mortgages it to secure the payment of a debt, and afterwards sells the equity of redemption subject to the lien of the mortgage, and the purchaser assumes the payment of the mortgage, as a portion of the purchase money, the latter becomes personally liable for the payment of the debt of the former to the holder of the mortgage in the first instance, and if the mortgagor is compelled to pay it, he can recover it from the purchaser of the equity of redemption. In such case the mortgagor and purchaser stand in the relation of principal and surety, the latter as surety for the former, to the extent of the mortgage debt. (*Halsey* v. *Reed*, 9 *Paige*, 446. *Marsh* v. *Pike*, 10 *Id.* 595, 597. *Cornell* v. *Prescott*, 2 *Barb. S. C. R.* 16. *Blyer* v. *Monholland*, 2 *Sandf. Ch. Rep.* 478. *Ferris* v. *Crawford*, 2 *Denio*, 595.)

I am not able to discover any thing in this case to take it out of the above rule. Looking at the deed alone, Munger would be liable personally to the extent of one half of the mortgage, but that liability was reduced by the instrument of November, 1842, to $1700 and interest. The provision in that instrument that if Thurber did not pay the $1550, Munger should be ex-

onerated from the whole, was purely penal, and it would not be according to equity to enforce it.

The claim of the defendant Munger to recover the costs of his defense, I think must fail, in consequence of the view above taken of his personal liability. Assuming the decree in that respect to be correct, I can see no ground for the claim to costs. It was necessary and proper to make him a party, and although he has been necessarily subjected to the expense of the defense in order to reduce his personal liability, yet it no where appears that he ever offered to pay what is now and by the decree adjudged against him, or admitted his liability to that extent. He chose to litigate the whole claim, and it is no ground for allowing him costs, that he he has succeeded partially but not wholly in his defense.

I think the decree is substantially right, and should be affirmed.