HALSEY and others, executors, &c. vs. REED and others.

Where R. who had given his bond and mortgage upon a tract of land to se-
cure the payment of $6000 and interest, afterwards sold a part of the
mortgaged premises to H., and as a part of the consideration of such sale,
H. assumed the payment of the whole of the bond and mortgage, and re-
ceived a deed from R. which stated that the premises thereby conveyed
were subject to the mortgage, and that the payment of the mortgage was
assumed by H. the grantee, and that the amount of such mortgage con-
stituted a part of the consideration of the deed; *Held*, that R. could not
recover the amount of the bond and mortgage from the executors of H.
before he had paid the same to the mortgagee; and that a recovery of mere
nominal damages in a suit brought by R. against such executors, before he
had paid any thing upon the bond and mortgage, was no bar to a subsequent
suit for the amount which R. had been subsequently compelled to pay
to the mortgagee; *Held* further, that the executors of H. would be
liable in equity to the mortgagee for the payment of the deficiency,
*in* case the proceeds of the sale of the part of the land which was
conveyed to their testator should be insufficient to pay the mortgage
debt and costs; but that the portion of the mortgaged premises convey-
ed to H. must first be resorted to for the payment of the mortgage, and that
the personal estate of the decedent was, in equity, only chargeable with
the deficiency.

Under the provisions of the revised statutes, as between the heirs or devisees
and the personal representatives of a deceased mortgagor, the mortgaged
premises are primarily chargeable with the payment of the mortgage,
unless the decedent has, by his will, made a different provision for the
payment of the mortgage debt.

Where the owner of mortgaged premises sells a part of the land to a purcha-
ser who assumes the payment of the whole mortgage, and the owner of
the residue of the land is obliged to pay the mortgage, the latter is entitled
to an assignment of such mortgage, to enable him to obtain satisfaction
out of the land of the person who has assumed the payment.

If the purchaser of mortgaged premises agrees with the mortgagor to pay off
and discharge the mortgage thereon, for the protection and indemnity of
the mortgagor, the mortgagee is in equity entitled to the benefit of such
agreement. And such agreement is within the equity of the provision of
the revised statutes which authorizes the court of chancery, in a foreclo-
sure suit, to make a decree over for the deficiency against a third person
who is liable for the payment of the mortgage debt.

Where a surrogate decrees a distribution of the personal estate of the deceased
debtor among his creditors, if any of such creditors has a security for his
debt upon another fund which is primarily liable for the payment of the
debt, the surrogate should compel such creditor to exhaust his remedy

against such fund, and only to come in as against the personal estate for the deficiency.

And where it is necessary for the surrogate to make a distribution of the personal estate of the decedent before such deficiency can be ascertained, he should direct a portion of the personal estate to be retained to meet the contingent claim for such deficiency.

1842.

Halsey
v.
Reed.

THIS was an appeal by the executor and executrix of J. M. Halsey deceased, from the sentence and decree of the surrogate of the county of Kings, decreeing the payment of the amount of a bond and mortgage out of the estate of the decedent, in the hands of the appellants as his personal representatives.    The facts of the case, as they appeared from the surrogate's return, were substantially these : In May, 1835, the respondent Reed gave to Johnson & Wyckoff a bond and mortgage on a tract of land in the city of Brooklyn, to secure the payment of $6000, in one year, with interest at the rate of six per cent.  In May, 1836, Reed paid the interest and gave a stipulation, endorsed upon the bond, that he would thereafter pay the interest upon the bond and mortgage annually at the rate of seven per cent per annum.    A few days thereafter Wyckoff assigned the bond and mortgage to Johnson ; and Johnson assigned the same to the Farmers' Loan and Trust Company, in July 1836, and guarantied the collection thereof with interest at the rate of seven per cent from the first of May preceding the date of that assignment.   In October, 1836, Reed sold and conveyed to J. M. Halsey certain portions of the mortgaged premises, for the consideration of $10,876, and as a part of such consideration Halsey assumed the payment of the bond and mortgage ; which payment was provided for by a clause in the conveyance from Reed to Halsey, stating that the premises conveyed were subject to the mortgage, and concluding as follows : " which said mortgage, and the interest which the said Philip Reed has agreed to pay thereon, from the first day of May last, is assumed by the said party of the second part, and the amount thereof constitutes part of the consideration of this conveyance and has been deducted therefrom."   The interest

March 15.

upon the bond and mortgage for the year ending on the first of May, 1837, was endorsed as paid, but when or by whom did not appear in the surrogate's return. But the three half yearly payments of interest which became due in November, 1837, and in May and in November, 1838, were paid by Halsey or his executors ; the first payment was by Halsey himself, and the two last by his executors. Halsey died previous to the 18th of January, 1838, leaving a widow, and seven children, some of whom were infants, his heirs at law. By his will he appointed his widow and one of his sons, the appellants in this case, his executor and executrix ; and they proved the will and took out letters testamentary thereon on the day last mentioned.

In July, 1838, the Farmers' Loan and Trust Company filed a bill for the foreclosure of the mortgage, alleging that the whole principal of the debt, together with the interest thereon from the 1st of November, 1837, was then due and unpaid ; to which bill Reed and Johnson and the executor and executrix and the heirs of Halsey, and some other persons having an interest in the mortgaged premises, were made parties. And about the same time Reed brought an action of assumpsit against the executor and executrix of Halsey, in the supreme court, upon the agreement to assume and pay the bond and mortgage ; in which suit Reed afterwards recovered nominal damages merely ; no evidence being given that he had been compelled to pay any thing on the bond and mortgage after the conveyance of a portion of the mortgaged premises to Halsey in 1836. In October, 1838, the appellants put in their answer to the foreclosure suit, admitting the conveyance of part of the mortgaged premises to the testator, and that he, as a part of the consideration of such conveyance, assumed the payment of the amount due to the complainants upon the mortgage. They also stated the commencement of the suit against them in the supreme court, by Reed, which was then pending, and claimed that there should be a decree for the sale of his portion of the mortgaged premises in the first place, which was more than sufficient to satisfy

the amount due on the bond and mortgage. Reed also put in an answer to the bill of foreclosure, whereby he incurred an expense of $40,86 ; and the foreclosure suit was still pending at the time of the hearing before the surrogate. It was admitted that Reed had paid to the complainants $210 on the bond and mortgage, for interest ; but at what time that payment was made, whether before or after the judgment for nominal damages in the supreme court, was not stated. The appellants also admitted that Reed had paid towards the costs in the foreclosure suit, $100,75.

In December 1839, the respondent Reed presented a petition to the surrogate stating, among other things, that he was a creditor of the decedent, and praying that the executor and executrix might account, &c. The appellants appeared before the surrogate and asked a discontinuance of the proceedings, and insisted that the petitioner was not a creditor, and that the judgment in the supreme court was a bar to any further claim on his part, on account of the alleged agreement of the decedent to assume and pay the bond and mortgage. They admitted, however, that they had sufficient personal estate of the decedent to pay the claim of Reed if it should be established against such estate. Thereupon the proceedings as to a general account of debts &c., of which notice had been given upon the application of the appellants, were abandoned by consent ; and the case was submitted to the surrogate to decide upon the claim of Reed, on the admissions and proofs before him. He decided that Halsey, the decedent, assumed to pay the bond and mortgage and interest, as a part of the consideration of the purchase of the portion of the mortgaged premises which was conveyed to him. He therefore decreed that the personal representatives should pay, out of the estate, to the respondent Reed, $351,60 for the interest which Reed had paid and the costs in the foreclosure suit, and to The Farmers' Loan and Trust Company the sum of $6000 and the interest, and any unpaid costs in the foreclosure suit ; and that the costs of the proceedings before the surrogate should be paid out of the estate of the decedent in the

hands of the executor and executrix. From this sentence and decree the executor and executrix appealed, and made Reed and the Farmers' Loan and Trust Company parties to their petition of appeal. Reed answered the petition. But the other respondents neglected to answer, and the appeal as to them was heard ex parte.

*A. G. Hammond,* for the appellants. The surrogate ought to have dismissed the proceedings before him upon the application of the respondent, it not appearing that Reed was either creditor, legatee or next of kin. The surrogate had no jurisdiction as between the appellants and the Farmers' Loan and Trust Company. That Company was not an applicant before him, but had adopted another remedy to enforce their claim. The judgment in the supreme court being for the same cause of action sought to be enforced here, is final as between the appellants and Philip Reed, and a bar to any further claims on his part, on account of the agreement of J. M. Halsey to assume and pay the bond and mortgage.

*W. C. Noyes,* for the respondent Reed. The surrogate was authorized to direct the amount due the Farmers' Loan and Trust Company to be paid to them, for the benefit of Reed. For these purposes Reed properly represented the amount due upon the mortgage, he being as between the mortgagees and himself ultimately liable for its payment. (2 *R. S.* 96, § 74.) The proceedings at law were no bar to Reed's claims; as at the time they were commenced he had not paid any money, upon which ground alone the circuit judge confined the recovery to nominal damages. The testator was liable to Reed, upon accepting the deed, for the amount of the mortgage which he assumed to pay and subject to which he made the purchase; especially as it formed a part of the consideration of the lands sold, and was so much money retained in his hands to which Reed was entitled. The clause in the deed is evidence of an undertaking on the part of the testator with Reed, to pay off

that mortgage as it should become due, and to make the debt his own. It is something more than an agreement to indemnify against the mortgage; it is a contract for the purchase at a given sum, of which the mortgage debt forms a part, and which on the sale is deducted from the consideration money. On a payment by the mortgagor of the whole or any part of such mortgage debt, he may recover the amount so paid from the estate of the testator. (15 *Martin's Louis. R.* 607. 3 *Ib.* 622. 4 *Ib.* 409. 3 *Simons,* 1. 1 *Ib.* 169. *Coote on Mort.* 493. *Parsons* v. *Freeman, Amb.* 115. *Cope* v. *Cope,* 2 *Salk.* 449. *Powell on Mort. by Rand,* 883 *and notes. Billinghurst* v. *Walker,* 2 *Brown's Ch. R.* 604. *Woods* v. *Huntingford,* 3 *Vesey,* 28. *Warring* v. *Ward,* 7 *Ib.* 332. *Cumberland* v. *Coddington,* 3 *John. Ch. R.* 229.)

THE CHANCELLOR. The question whether the recovery of nominal damages in the supreme court is a technical estoppel to any further claim against the personal representatives of Halsey for the non-payment of the bond and mortgage, depends upon the true construction of the agreement which is recited in the deed from Reed to Halsey. If it was intended as an absolute and unconditional promise on the part of Halsey to pay the principal and interest of this bond and mortgage to Reed, so as to enable him to sue and recover upon that promise in his own name, although he had not been compelled or required to pay any thing thereon to the holders of the bond and mortgage the whole contract with Reed was probably merged in the judgment upon such contract; although the amount of that recovery was merely nominal. But if the real intention of the parties to that agreement was that Halsey should assume the payment of the bond and mortgage to the then holders thereof, so as to give them the right to claim the benefit of that promise, as in the cases referred to by Chancellor Kent in *Cumberland* v. *Coddington,* (3 *John. Ch. Rep.* 254,) it was a mere contract of indemnity as between Halsey and Reed. In that case the latter could not recover until he

had actually paid something on the bond and mortgage himself. And according to the decision of the court for the correction of errors, in *Wright* v. *Butler*, (6 *Wend. Rep.* 284,) a recovery for the amount of a partial payment would not bar a new suit for monies which Reed had afterwards been compelled to pay to the holder of the bond and mortgage. Upon the best consideration I have been able to give to this case, I conclude that the real intention of the parties to the deed of 1836 was, that Halsey should take the land subject to the payment of the whole amount due upon the bond and mortgage, and should indemnify Reed, as the obligor in the bond and as the owner of the residue of the premises included in the mortgage, against the payment of the mortgage debt or any part thereof, but that it was not the intention of either party that Reed should have the right to sue Halsey for this part of the consideration money before Reed should have actually been compelled to pay it for his own indemnity.

It is not necessary to inquire whether the holder of the bond and mortgage could have maintained an action at law against Halsey upon this promise, within the principle of the decisions in the case of *Starkey* v. *Mill*, (*Style's Rep.* 296,) *Dutton* v. *Poole*, (2 *Levintz*, 210,) and of *Schermerhorn* v. *Vanderheyden*, (1 *John. Rep.* 139.) For whatever may have been their rights at law, there is no doubt that in equity the assignees of the bond and mortgage would have the right to a decree against Halsey or his personal representatives for the deficiency, upon a foreclosure and sale of the mortgaged premises, if the proceeds of the sale should be found insufficient to pay the debt and costs. For it is a well settled principle of this court that the creditor is entitled to the benefit of the collateral obligations for the payment of the debt which any person standing in the situation of surety for others has received for his indemnity and to discharge him from such payment. (*Bank of Auburn* v. *Throop*, 18 *John. Rep.* 505. *Curtis* v. *Tyler & Allen*, ante p. 432.) I am also of the opinion that a case like the present is with-

in the equity of the provision of the revised statutes authorizing this court, in a foreclosure suit, to make a decree over for the deficiency against a third person who has become responsible for the payment of the mortgage debt ; although it is not a case within the letter of the statute.(*a*)

Even if Reed could not compel the holders of his bond and mortgage to resort to the personal liability of Halsey, or to his estate in the hands of the appellants, for the payment of the deficiency after a foreclosure and sale of the portion of the mortgaged premises conveyed by the deed of 1836, he would be entitled to have the decree so framed as to provide for the sale of that part of the mortgaged premises in the first instance. And if that was not sufficient to pay the debt and costs, and he was compelled to pay the deficiency to save his own property from being sold, or in discharge of his personal liability, the estate of Halsey would be clearly liable to him for that amount. Or if he had paid the amount of the bond and mortgage voluntarily to the present holders thereof, he would have had a right to demand an assignment of the same, to enable him to enforce payment out of the part of the premises conveyed to Halsey, and to obtain satisfaction of the deficiency out of the other estate of the decedent. The difficulty in sustaining the decree of the surrogate in this case, however, is that it charges the debt of the testator upon the wrong fund ; by decreeing its payment out of the personal estate exclusively, instead of compelling the creditor to exhaust his remedy in the first place against the part of the mortgaged premises embraced in the deed of 1836. This was unquestionably the primary fund for the satisfaction of the mortgage debt, in the contemplation of the parties to that deed. And by the provisions of the revised statutes it is also made primarily liable for that debt, where the testator has not otherwise directed by his will. For it is clearly within the equity of the section of the revised statutes which provides that whenever any real estate sub-

---

(*a*) See *Curtis and others* v. *Tyler & Allen, ante p.* 432.

ject to a mortgage executed by an ancestor or testator shall descend to an heir or pass to a devisee, such heir or devisee shall satisfy and discharge such mortgage out of his own property without resorting to the executor or administrator ; unless there be an express direction in the will of such testator that such mortgage shall be otherwise paid. (1 *R. S.* 749, § 4.) In this case, it is true, the mortgage itself was not executed by Halsey the testator. But he had assumed the payment thereof, and the part of the mortgaged premises embraced in the deed of 1836, descended to his heirs charged with the payment of the whole mortgage debt. The note of the revisers to this section of the statute clearly shows that the intention was to make the premises charged with the mortgage the primary fund for the payment of the debt, in all cases as between the heir or devisee and the personal representatives of the testator or intestate who had assumed the payment of the debt ; except where the decedent by his will had made a different provision for such payment. In other words, the object of this section was to abrogate the rule of this court which in certain cases compelled the personal representatives of the decedent to pay off incumbrances upon his real estate for the benefit of the heir or devisee of such real estate.

In the present case I am also inclined to think that the premises conveyed by the deed of 1836, in the hands of the heirs at law of the grantee, were primarily liable for the payment of the mortgage debt, independent of the statute or any understanding of the parties to that deed, according to the English cases on the subject. (*See Noel* v. *Lord Henley, Daniels' Rep.* 330 ; *Forrester* v. *Lord Leigh, Amb.* 171 ; *Tweddell* v. *Tweddell,* 2 *Bro. C. C.* 101, 152 ; *Butler* v. *Butler,* 5 *Ves.* 534 ; 2 *Powell on Mort. by Coventry,* 863 ; *and Cox's note to Evelyn* v. *Evelyn,* 2 *Peer Wms.* 664.) This part of the mortgaged premises therefore being primarily liable for the payment of the whole bond and mortgage, Reed could not by a voluntary payment to the mortgagee charge the personal estate in the first instance. Nor was it equitable for the surrogate to decree a payment

of the whole bond and mortgage to the holders thereof, before they had exhausted their remedy by a foreclosure and sale of that part of the mortgaged premises which had descended to the heirs. It does not appear when the respondent Reed paid the $210 towards the interest of the bond and mortgage ; nor why he paid the costs of the complainants in the bill of foreclosure while that suit was still pending and undetermined. I must presume, therefore, that both payments were merely voluntary. The proper course for Reed, however, was to permit the foreclosure suit to proceed to a hearing, and then to ask for such a decree as would compel the complainants to exhaust their remedy by a sale of the portion of the land conveyed to Halsey and which had descended to his heirs. And then if there was a deficiency, so that he was obliged to pay it to save his own portion of the premises from being sold, he would have had a valid claim for the amount thus paid, and the costs to which he had been subjected in the foreclosure suit against the personal estate of Halsey, in the hands of his executor and executrix. For in those cases in which the real estate in the hands of the heir or devisee is primarily liable for the debt, as between the owners of such real estate and the personal representatives of the decedent, the personal estate may still be liable to the creditor where the primary fund is insufficient for that purpose.

The surrogate, however, in decreeing distribution of the personal estate among the creditors of the decedent, should do what this court would do upon a bill filed here for an account and distribution of such estate in the hands of his personal representatives—compel the creditor who has an additional security upon another fund which is primarily liable, to exhaust his remedy against that fund, and only to come in as against the personal estate for the deficiency. And where it is necessary to make a distribution of the estate before such deficiency can be ascertained, he should direct a portion of the fund in the hands of the executor or administrator to be retained to meet the contingent claim for the deficiency. In this case I think the surrogate

1842.

Halsey
v.
Reed.

should have either dismissed the petition of Reed without prejudice to a future application ; or should have suspended proceedings thereon until the deficiency, if any, for which the personal estate might be liable, was ascertained by the result of the proceedings in the foreclosure suit. The will of the decedent is not before me, and I cannot, therefore, see whether the interests of the widow and heirs in the real and personal estate are the same or not. But the presumption is that they are different. For in the absence of any provision in the will on the subject, the widow would be entitled to one third of the personal estate absolutely ; whereas in the real estate she takes but a life estate in the third thereof. It is therefore important to the interests of one of the appellants, at least, that the mortgage debt should be charged upon the proper fund.

The decree of the surrogate must be reversed, and the proceedings dismissed. But without prejudice to the rights of the respondents, or either of them, to institute new proceedings before the surrogate, after the remedy against that part of the mortgaged premises embraced in the deed of 1836 shall have been exhausted, to compel payment of the deficiency if any, and any other legal claims arising out of the contract of sale between Reed and Halsey, out of the personal estate in the hands of the executor and executrix, or otherwise, as the respondents may be advised. And neither party is to have costs as against the other either on this appeal or on the proceedings before the surrogate. As the rights of the parties also may have been materially changed by the proceedings in the foreclosure suit during the pendency of this appeal, any of the parties are to be at liberty to file a bill in this court, if necessary, to settle their rights according to equity, if they shall be advised that it is proper to do so.