FLAGG, comptroller, &c., *against* MUNGER and others.

The comptroller of this state has power to foreclose a mortgage assigned to him by a bank to secure the redemption of its notes, on default being made in the payment of the mortgage.

Where one sold real estate subject to one-half the amount of a certain mortgage, which the purchaser assumed in the deed of conveyance to pay as part of the purchase money, and the deed was made and recorded by the vendor, but not accepted by the purchaser until a reduction was made in the price, which reduction was made by the vendor executing his bond to the purchaser, conditioned for the payment of a certain portion of the half of the mortgage expressed in the deed to be assumed by the purchaser; and

the bond contained a clause to the effect that in case of default by the obligor in performing the condition of the bond, the obligee was not bound to pay any part of the mortgage, " anything contained in the deed to the contrary notwithstanding;" it was *Held*, in an action to foreclose the mortgage and to charge the purchaser personally for any deficiency, that the deed and bond must be construed together as one instrument; and that the final clause of the bond was not in the nature of a penalty, but a valid condition, on the breach of which by the vendor the purchaser was released from personal liability to him.

That the plaintiff in such action of foreclosure, claiming against the purchaser of the real estate an equitable right under the deed of conveyance, was subject to the equities which existed against the vendor; and could not, therefore, have a personal judgment against the purchaser for that part of the mortgage which he had assumed by the deed of conveyance to pay.

On the 1st day of April, 1839, Philip Thurber executed his bond and mortgage to Anson Thomas, president of the Bank of Central New-York, at Utica, an association organized under the general banking law, to secure the payment of $6500 and interest in one year. The mortgage covered one hundred and fourteen lots of land in the city of Rochester. The bond and mortgage were, on the 27th of April, 1839, assigned to the comptroller of the State of New-York, under the provisions of the " Act to authorize the business of banking," passed April 18, 1838. The bill in this case was filed in March, 1847, to foreclose the mortgage.

At the time when this mortgage was executed, it appears that William Gay, of Suffield, Connecticut, had an equitable interest in some portion of the mortgaged lands. Gay's title, however, is not set up against the mortgage, but is admitted to be subject to it. In May, 1842, Thurber and Gay made a division of the mortgaged lands and of other lands not included in the mortgage, and each assumed the payment of one-half of the mortgage. On the 15th of June, 1842, Thurber executed to Munger a deed for upwards of one hundred lots of land in the city of Rochester, including twenty of the lots which were covered by the mortgage. The consideration expressed in the deed was $19,765. The deed contained a clause stating that the conveyance was made to

Munger subject to one-half of the mortgage executed to the Central Bank by Thurber, which half, amounting to $3250, the grantee, Munger, assumed to pay as a part of the consideration money.

The defendant Munger, however, alleged in his answer that this deed, although recorded shortly after its date, was executed and recorded without his knowledge or consent, before the bargain was consummated, and that he refused to accept it until the lands were surveyed. Upon the survey, large deficiencies appeared in the estimated quantity of the lands, and it was thereupon agreed that the price should be reduced $1550. Thurber then, on the 21st of November, 1842, executed to Munger his bond, conditioned to pay $1550 of the half of the mortgage which, by the terms of the deed, was to be assumed by Munger. The $1550 was to be paid by Thurber to Munger, with interest semi-annually; the principal to be paid whenever it should be demanded by the holder of the mortgage, either of Thurber or of Munger; and the sums so paid to be applied by the obligee in payment of the bond and mortgage. The bond contained the following clause : " And in case the said obligor shall fail to fulfill the obligations hereinbefore mentioned to be performed by him, or any part thereof, in the manner and at the times above specified for the fulfillment thereof, the said obligee is not to be bound to pay or satisfy any part or portion of the said bond and mortgage, anything contained in any deed or deeds heretofore existing to the contrary notwithstanding." Upon the execution of this bond, the deed, already recorded, was delivered and accepted. Nothing was ever paid by Thurber towards the $1550 here assumed to be paid by him.

In April, 1844, the heirs of William Gay, then recently deceased, quit-claimed their interest in part of the mortgaged premises to Henry Bissell, one of the defendants.

The supreme court, at special term (SELDEN, J.), decreed a sale of the premises in the following order : First, that

part not sold to any of the defendants, or so much thereof as might be necessary to pay the amount due, less the sum of $1700 and interest assumed by Munger. Second, the twenty lots conveyed to Munger, " or so much thereof as may be necessary to raise the debt and costs not raised by the sale of the first parcel; and if anything shall remain unpaid after the sale of the twenty lots, then the remainder of the unsold lots first mentioned." Third, a part of the lots conveyed to Bissell. Fourth, the residue of the lots in the inverse order of alienation. Finally, it charges Munger personally with any deficiency, after such sales, in the sum of $1700, interest and costs.

The defendant Munger appealed, and the decree was affirmed at general term. (14 *Barb.*, 196.)

*H. R. Selden* for the appellant.

I. The plaintiff had no right to institute, and cannot maintain this action. His whole authority is derived from the provisions of the general banking law, passed April 18, 1838. If the assignment to Cook carried any interest beyond such as he could hold as comptroller, under the law referred to, such interest would not pass by operation of law to his successor, but would require an assignment, and none is pretended. The complainant's power over the mortgage was such as the statute gave him and no other. This was adjudged in the case of *Mitchell* v. *Cook* (3 *Seld.*, 538), where it was held that the comptroller could not assign a bond and mortgage to a stranger, on receiving from such stranger their amount in the circulating notes of the bank from which they were received. ( *See Sherwood* v. *Reade*, 7 *Hill*, 431; *Powell* v. *Tuttle*, 3 *Comst.*, 396; *Olmsted* v. *Elder*, 1 *Seld.*, 144.) The comptroller had power to reassign the mortgage, on receiving other approved mortgages of equal amount (*Laws of* 1841, *p.* 353, § 9); to receive payment of the principal or any part of it. (§ 9.) But his right to receive the interest

may be doubtful, unless the bank makes default in paying its bills or notes, or he shall adjudge the securities insufficient. ( *Ib.*, § 10 ; *ib.*, 358, § 7.) When default is made in the payment of notes, he may sell the bonds and mortgages at auction. (§ 11.) Beyond the above he has no power whatever over the bonds and mortgages. The 12th section expressly provides that they shall be held " until the same are paid." The state has no interest in the mortgages. Its comptroller is made a trustee of them, with precisely such power over them as the law gives him. Having no interest, he is but a statutory agent, and his authority is limited, like that of any other agent, by the terms of his appointment. The court below seems to have regarded the state as the party in interest. If such were the fact, it would undoubtedly be a sound construction of the statute to regard " the right to collect," as within the intention of the makers, though not expressly mentioned. We think it never could have been the intention of the legislature to make the comptroller the attorney for the different banking institutions of the state to foreclose their mortgages. Our reasons are : 1. If such a power had been intended to be given, it would have been given expressly. So far from that, it seems to have been carefully excluded. 2. It would involve that officer in a multitude of suits, perhaps, like the present, of long duration, and subject him to many charges for costs and counsel fees. 3. The act is silent with regard to costs, not are we aware of any provision · by law, under which they can be paid. 4. Instead of furnishing a prompt means of redeeming the notes of the bank, which is what the necessities of bill-holders require, it might involve almost interminable delay. The course which the statute points out avoids all delay and all expense. This was designed, together with the power to retain the interest under § 10, as a complete substitute for the power to collect. 5. The great care and responsibility which, if we are wrong, would devolve upon the comptroller, was never designed to be thrust upon him by this act. Nor

was the great patronage which it would give him designed to be placed in his hands.

II. The appellant, upon Thurber's deed to him, is not personally liable for any deficiency which may appear, after sale of the mortgaged premises. 1. The deed and the bond executed by Thurber, although bearing different dates, were simultaneously delivered and are to be construed together, each constituting a part of the same transaction. (*Rogers* v. *Kneeland*, 13 *Wend.*, 114; *Cornell* v. *Todd*, 2 *Denio*, 130; *Hills* v. *Miller*, 3 *Paige*, 254; *Smith* v. *Ransom*, 21 *Wend.*, 203.) 2. By the terms of the deed and bond, regarded as one instrument, Munger's personal liability for the $1700 ceased when Thurber made default in the payment of the $1550 and interest. This is a mere question of construction of the two instruments. It involves no question of forfeiture or penalty, as was supposed by the court below. When it was ascertained that there was a deficiency in the lands, to the value of $1550, the equitable obligation resting upon Munger to pay half the mortgage in suit was reduced by that amount ($1550), leaving it, as to that mortgage, only $1700. By the terms of his purchase, therefore, when he paid the $1700, his title was to be clear from incumbrances, and hence the provision in the bond of Thurber, that unless Thurber should pay the $1550, without default, there should be no personal obligation on the part of Munger to pay the $1700. The bond is correctly drawn to carry into effect the obvious intent of the parties. That such should be the construction, we need hardly cite authorities. (*Chit. on Cont.*, 6 *Am.* ed., note 2; *Wilson* v. *Troup*, 2 *Cow.*, 228, 229, WOODWORTH, J.) 3. Thurber was in default. His neglect to pay interest was a default. This suit itself was a demand which required the payment by Thurber forthwith. Besides, the plaintiff in this claim assumes to take Thurber's position under the bond. Of course he had notice of his own demand, and notice to him is notice to Thurber, for all the purposes of this suit. 4. All that the

Flagg *against* Munger.

plaintiff can claim here is to occupy the position of Thurber, as against the defendant Munger; and if Thurber himself would not be entitled to a decree against Munger to pay the $1700, the complainant is not entitled to it.

III. Assuming the decree to be correct in the principles upon which it is based, it is wrong in its details.  1. It was wrong to direct the sale of Munger's twenty lots, to pay anything beyond the one-half of the mortgage and interest, until after all the residue of the mortgaged premises had been sold and failed to pay the other half.  2. The decree makes no provision for the payment of $1550 and interest, which was to be paid by Thurber.  Of this Munger could not complain, provided his twenty lots were only to be sold to pay the $1700 and interest; but as those lots were holden to the complainant, as well for the residue of the mortgage as for the $1700, and were ordered to be sold if such residue was not otherwise paid, Munger was interested that Thurber should pay the $1550 and interest toward such residue.  The decree, compelling Munger to perform his agreement to Thurber, should also have compelled Thurber, or the complainant who takes Thurber's place, to perform his agreement also.  As it is, it grants to the complainant equity without compelling him to do equity. 3. The decree directs the payment of the whole amount of costs as well as debt and interest to be paid out of the proceeds of the twenty lots, if those proceeds should be sufficient.  The defendant Munger was no more in default for not paying his share of the principal and interest than were the other holders of the mortgaged property for not paying their shares.  The costs, therefore, should have been apportioned. ( 9 *Paige,* 660, 663.)

IV. If we are right in the first point, the bill should be dismissed, with costs.  If wrong in the first and right in the second, the complainant is entitled to the usual decree for foreclosure and sale; and his demand of a personal decree against Munger should be denied with costs.  If

wrong in the first and second points, the decree should be modified according to the suggestions of the third point.

*F. Kernan* for the respondent.

I. This suit was properly instituted, and the mortgage could only be foreclosed by the plaintiff in this suit. As comptroller, he held the title to the mortgage by assignment, and was in law the holder and owner thereof. There was no other party that could enforce it upon any default in payment. (*Laws of* 1838, *ch.* 260, §§ 9, 10, 12.)

II. The defendant Munger, by the express terms of the deed under which his title to the twenty lots is derived, assumed the payment of one-half of the mortgage. This obligation was repeatedly recognized by him, and other parties subsequently purchased under the recognition and affirmation of its existence by him.

III. The effect of this conveyance to Munger, under the terms of the deed, was to put Thurber, the mortgagor, in the position of a surety, and Munger became the principal debtor, and as such primarily liable to pay the debt by him assumed. (*Halsey* v. *Reed*, 9 *Paige*, 446; *Marsh* v. *Pike*, 10 *id.*, 595–7; *Cornell* v. *Prescott*, 2 *Barb.*, 16; *Blyer* v. *Monholland*, 2 *Sandf. Ch. R.*, 478; *Ferris* v. *Crawford*, 2 *Denio*, 595.) And this obligation enured to the benefit of the mortgagee and his assigns, although he did not rely upon that undertaking and was ignorant of its existence. (*Curtis* v. *Tyler*, 9 *Paige*, 432.)

IV. Such confessedly was Munger's position under the deed, and that bound him to pay the half of the mortgage. But if the instrument of November, 1842, is to be held and treated as a modification of the obligation assumed by the deed, it clearly cannot be extended beyond its scope and object, which was to limit the liability of Munger to the amount of $1700, imposing upon Thurber an obligation to pay the balance in certain contingencies; which contingencies, so far as appears in the case, have never arisen.

No such demand as the instrument contemplates has ever been made; there being no evidence to show that Thurber is not abundantly able to perform, and the proof on the part of the plaintiff showing that he has long ago offered to perform his part of that engagement.

V. The clause in that instrument, that if Thurber did not pay the $1550 Munger should be exonerated from the whole sum, is purely penal. It is in the nature of a penalty, merely intended to secure Thurber's performance; and the mere fact of his non-payment cannot render him liable for the whole sum of $3250. His real obligation is to be enforced like any other contract. At all events, the utmost that Munger can ask, in equity, is to have his personal liability limited to the sum he undertook to pay, which is precisely what the decree provides for, and is, therefore, as to him entirely right. ( *Spencer* v. *Tilden*, 5 *Cow.*, 150, *note; Dakin* v. *Williams*, 17 *Wend.*, 447; *S. C. in error*, 22 *id.*, 201.)

VI. Munger was upon no principle entitled to costs; for 1. This being an equity case, the granting or denying costs was a matter of pure discretion. (12 *John.*, 500.) 2. He sets up a defence broader than the rights he could possibly claim. He never offered to perform any part of his obligation, but denied and litigated the whole claim of the plaintiff, and on this ground costs were properly denied him. (9 *Paige*, 211.)

RUGGLES, J. The first objection taken to the decree is that the comptroller had no right to institute proceedings to foreclose the mortgage, and cannot therefore sustain the action.

By the 7th section of the act of 1838, to authorize the business of banking, an association formed under it may secure half their circulating notes by transferring to the comptroller bonds and mortgages instead of public stocks, as authorized by the previous sections. The legal title thus

becomes vested in the comptroller, in trust for the redemption of the circulating notes of the association, and, when they are paid, for the association itself.

A right to collect the money due upon a bond and mortgage or other security is a right incident to the ownership, and passes with it from the original owner to the assignee. If the security were assigned in trust, the right of the trustee to collect the money may depend on the nature and object of the trust. Where the collection would be a breach of trust, the trustee cannot maintain the action; but where it is in conformity with and in furtherance of the object of the trust a trustee has in this respect the same power as the absolute owner. The securities in question were held by the comptroller; first, for the benefit of the billholders, secondly, for the benefit of the association, whose stockholders had the ultimate beneficial interest in the proper application of the money. The statute does not give to the comptroller the express power of enforcing payment. There was no need of such a power. It was one of the incidents of the assignment of the securities to him, qualified, however, by the nature of his trust. The 12th section of the statute declares that the bonds and mortgages shall be held by him exclusively for the redemption of the bills put in circulation by the association. But the other sections of the act show that the association retains nevertheless a beneficial interest in them, independent of its interest in the application of their value to the redemption of the bills. The 10th section authorizes the association to receive the interest accruing annually on the securities, unless default be made in the payment of their bills. The Bank of Central New-York had thus a direct and immediate beneficial interest in the bond and mortgage, and this, notwithstanding the language of the 12th section, was a part of the trust on which they were held by the comptroller.

The duty of the comptroller, therefore, as the trustee for the bank in relation to the interest, requires him, as in other

cases of trust, to act for the interest of his beneficiary; and at least to permit his name to be used for the collection of the interest by suit, if that should become necessary. He might undoubtedly require a proper indemnity against the costs and expenses of the suit, and on being satisfied in that respect there can be no objection to a suit in his name to enforce payment. The statute is itself an absurdity unless it furnishes or permits the use of means necessary to protect the rights and interests which it creates or establishes. Its primary object in requiring securities to be placed in the hands of the comptroller is to protect the billholders against the insolvency of the banks. It is obvious that cases may often occur in which it may become necessary for the interest of the billholders, as well as for the banks, that payment of the securities should be enforced by legal process. The lands mortgaged may be depreciating in value, and the bank may not be in condition to take them out of the hands of the comptroller, by giving other securities, and yet no default in paying the circulating notes may have occurred. The security of the billholders in such case may require that the money should be collected and held until other securities be given, or so much in circulating bills be returned by the bank, or until it shall become necessary to pay it to the billholders, by failure of the bank. There is nothing in the statute to prevent such collection, either directly or by just and necessary implication. The power to reassign the bonds and mortgages contained in the 5th and 9th sections provides a mode by which the banks may again become absolute owners of these securities; but one of the many objects of the statute was to protect the billholders against the fraud and neglect of the bank and its officers, and this object cannot be perfectly attained unless the trustee may, in virtue of his general obligations and duties as such, attend to the interests of his *cestuis que trust*. The mortgagor may become the president of the bank; and his interest in regard to the payment of the security may be in direct hos-

tility to the interest of the other *cestuis que trust.*   The power of the comptroller to sell these bonds and mortgages after the failure of the bank to redeem its bills, as provided for in § 11, was given for the purpose of securing a speedy redemption after the failure ; but it does not interfere with his power to collect before failure, where it may be deemed necessary for the interest of any of the parties beneficially interested.   No doubt can exist that the collection of the money by the comptroller is a valid discharge of the security.   The defendants, therefore, can have no ground of complaint of any injustice done them.

The second point on the part of Munger the appellant is, that he is not personally liable for any deficiency which may appear on the sale of the mortgaged premises.   In case of the failure of his twenty lots to bring the sum of $1700, and interest thereon from July 1, 1842, the decree charges him personally with the balance.   This clause in the decree is founded on the clause in the deed from Thurber to Munger, by which the latter assumes to pay one-half the bank mortgage, modified by the bond which he took from Thurber upon accepting the deed.   He retained $1700 of the purchase money, because his twenty lots were subject to the mortgage, and Thurber by his bond undertook to pay $1550, which together made up half the mortgage.   This personal liability depends on the true construction of the deed and bond, when taken together and regarded as one entire agreement in relation to the point in question.   The agreement contained in the two instruments amounts to this :   That Thurber should pay $1550 and interest thereon to Munger, to be applied on the mortgage ; and if he did so, that Munger should pay the residue, to wit, $1700 and interest.   These two sums would pay off half the mortgage.   But in case Thurber should fail to pay his proportion as above, then that Munger should not be bound to pay any part of his $1700 and interest.   This would have left Munger in the same condition as if no agreement had been made.

Thurber, as I understand the agreement, does not undertake to pay off the entire half of the mortgage, in case he fails to pay the $1550 with punctuality. Munger's twenty lots would still be liable to sale under the mortgage, and there is nothing in Thurber's bond by which he engages to indemnify Munger against the sale, beyond the indemnity already in his hands retained out of the purchase money. Whether they would have sold for more or less than $1700 and the interest thereon (which had been retained by Munger out of the purchase money), was matter of speculation and doubt; according to Munger's answer they were estimated in his purchase at $1813. If they should sell for more than $1700 and interest, it would be Munger's loss and Thurber's gain. If for less it would be Thurber's loss, because he was ultimately liable for any deficiency; and Munger would be a gainer of the difference between the amount they sold for and the purchase money retained. Thurber would still have been liable to pay the $1550 to Munger; and this was right, because the purchase money (including the $1700 retained by Munger as an indemnity against the mortgage) had been overpaid to the extent of the $1550 for which the bond was given. Thurber did not in fact forfeit or lose the $1700 which Munger had retained. He will instead of that sum have the advantage of the sale of the twenty lots and of the application of the proceeds upon his bank mortgage. I do not perceive that this was in any sense an unconscientious bargain. They had the right to make it, and the mortgagee has no right to complain of it, for his security was in no respect impaired by it. The decree, therefore, was erroneous in charging Munger personally for any deficiency, and should be modified accordingly.

It is erroneous also in another particular. The lots conveyed by Thurber to Gay in his lifetime were liable to pay one-half the bank mortgage; and Munger's twenty lots were not rightly chargeable with the payment of any part of that half, until it was ascertained by a sale of the lots

conveyed to Gay that the one-half could not be raised from them.  Bissell's lots are a part or the whole of Gay's portion of the property.  The decree directs the sale: first, of that portion of the mortgaged premises not sold to any of the defendants; second, of Munger's twenty lots for the purpose of raising the whole amount due on the mortgage; and thirdly, of Bissell's lots to make up any deficiency. The decree should be so modified as to subject Gay's portion of the mortgaged premises to the payment of one-half the amount due, and the residue to the payment of the remaining half; and if there should be a deficiency in either portion, resort may then be had to what may remain of the other.  If the order in which the different lots in either of the two portions ought to be sold cannot be settled by the solicitors; a reference should be ordered by the court below to ascertain and report thereon.

Munger should be allowed his costs in the court below, but not on his appeal to this court — to be paid out of the proceeds of the sale.

PARKER, J.   The mortgage which this action is brought to foreclose was assigned by the mortgagee, Anson Thomas, president of The Bank of Central New-York, to Bates Cook as comptroller, on the 27th of April, 1839, "under the provisions of the act to authorize the business of banking," passed April 18, 1838; and the first objection made by the appellant is, that the plaintiff has no right to institute and maintain this action.   If the assignment to Cook carried no interest except what he could hold as comptroller under the law referred to (and I understand no more to be claimed by the plaintiff) it is conceded by the defendant that such interest passed by operation of law to his successor.   But it is contended that the comptroller has no power, under the statute, to collect by foreclosure the amount due on a mortgage.   The assignment is absolute in its terms.   It vests the comptroller with the legal title to the mortgage, and he

holds it as trustee for the purposes of the act. Where a direction is given by statute it must be strictly pursued or it will be void. (*Sherwood* v. *Reade*, 7 *Hill*, 431.) Under this rule, it was held that a power specially conferred on two persons, to be exercised jointly, could not be exercised by one of them (*Powell* v. *Tuttle*, 3 *Comst.*, 396; *Olmsted* v. *Elder*, 1 *Seld.*, 144); and under this same act, it was held by this court, in *Mitchell* v. *Cook* (3 *Seld.*, 538), that the comptroller has no power to assign a bond and mortgage to a stranger, on receiving from him their amount in the circulating notes of the bank from which they were received, the only power to assign being given by the 9th section, which authorizes a reassignment to the person or association which transferred the same, and an assignment in all other cases being virtually forbidden by the 12th section, which requires such mortgages to be held by the comptroller until the same are paid. The power to foreclose is not conferred by the act in express terms. If it exists, it must result from the title conveyed by the assignment, or be implied from the powers conferred by the act. It is not certainly forbidden, as is the power to assign by the 12th section. The comptroller is to hold the mortgages till they are paid, but he is not thereby precluded from enforcing payment. There may be cases in which a foreclosure may be absolutely necessary for the protection of the trust fund, or where the security upon the land may be insufficient and a personal claim for the deficiency exists against the mortgagor or some other person, or where an injunction may be necessary to stay waste, and delay to foreclose by action in such case would put at hazard the debt secured by the mortgage. No relief in such case could be obtained under the 11th section, which authorizes a sale at auction only in case the person or association shall fail or refuse to pay its bills or notes on demand, in the manner specified in the 4th section.

I think the right to institute and maintain an action to collect is incidental to the title derived under the assign-

ment; and being necessary to the protection of the trust fund and the objects of the act, it will be implied from the powers expressly conferred. The statute authorizes the comptroller to receive payment of both principal and interest. (§§ 9 *and* 10.) He may allow the person or association assigning to receive the interest, unless the security becomes insufficient, of which the comptroller alone is to be the judge. He has the custody as well as the assignment of the papers. He can only assign in one case and sell at auction in another; and neither of these will aid him in protecting the trust fund against the deterioration of the land mortgaged or the failing circumstances of the mortgagor, whose personal responsibility has become necessary to the safety of the demand. The power to collect in such case must be either in the person or association assigning or in the comptroller. It must exist somewhere; and it would be alike incompatible with the language of the assignment and the safety of the billholder to suppose that the person or association assigning still had such a control over the property assigned. It would be an absurdity to hold that the party assigning had still the exclusive power to enforce payment, when the comptroller alone has by the statute the right to receive payment. By the act of 1840 (*Laws of* 1840, 306, § 9), bonds and mortgages are authorized to be executed by any banking association or individual banker direct to the comptroller; and if they may not be foreclosed by the comptroller, they are placed beyond the pale of legal remedy. It will hardly be claimed that it was designed to give the comptroller greater powers over these mortgages than over those assigned under the act of 1838. I think that in both cases the right to receive payment implies the right to demand it, and that this action is properly brought in the name of the comptroller. Where the legal title to a chose in action is vested in a trustee by assignment, the law gives, as in every other case of legal ownership, a right of action to enforce or collect it.

The second objection is, that Munger is not personally liable for any deficiency there may be after a sale of the premises. By the deed from Thurber to Munger, dated June 15, 1842, it was declared, among other things, that the conveyance was made subject to one-half the mortgage in question, which was assumed by Munger and which was part of the consideration of the conveyance. But to ascertain the precise contract between Thurber and Munger, this deed must be considered in connection with the bond of Thurber bearing a later date, but in fact delivered at the same time and executed after the deficiencies in the land had been ascertained. By the deed alone Munger would have assumed to pay on the mortgage $3250, but this was reduced by the bond to $1700, Thurber agreeing thereby to pay on the mortgage, or to Munger to be applied on the mortgage, the balance of the $3250, viz., $1550 for the deficiency in the lands. And it was further agreed that Munger's personal liability for the $1700 ceased when Thurber made default in the payment of the $1550 and interest. It is claimed on the part of the plaintiff that this last provision was a mere penalty to enforce the payment of the $1550 by Thurber, and that Munger is still personally liable for the payment of the $1700, under the rule well established in equity, that where a purchaser of an equity of redemption takes it subject to the mortgage, which he agrees to pay as part of the consideration of his purchase, he will be held personally liable to the mortgagee and will be regarded as the principal debtor, the mortgagor standing as his surety. ( *Halsey* v. *Reed*, 9 *Paige*, 446 ; *Curtis* v. *Tyler*, *id.*, 432 ; *Marsh* v. *Pike*, 10 *id.*, 595 ; *Ferris* v. *Crawford*, 2 *Denio*, 595 ; *Cornell* v. *Prescott*, 2 *Barb.*, 16 ; *Blyer* v. *Monholland*, 2 *Sandf. Ch. R.*, 478.) That rule is undoubtedly applicable to this case, unless it is changed by the agreement of the parties exempting Munger from personal liability for the $1700, in case Thurber failed to pay his share of the mortgage, $1550,

The question to be decided is, whether the clause under consideration is a penalty. A penalty is generally a sum of money agreed to be paid or forfeited on failure to perform or to omit to do a certain act; but a penalty may, perhaps, be created in a different form. In this case Thurber did not agree to pay any additional sum of money. He only agreed that Munger should not pay, the effect of which was to make Thurber again stand as the principal debtor, instead of surety for Munger for the debt. In other words, it restored him to his original position.

I concede the rule to be, that where a contract provides a forfeiture for the purpose of securing the payment of a sum of money, or the performance of an act which may be compensated in damages, the sum forfeited will be deemed a penalty, and not liquidated damages. (*Story's Eq. Jur.*, § 1314.) But I do not understand that the provision in question in this contract was inserted merely to secure payment of the $1550 on the part of Thurber. It was inserted to protect Munger against the consequences of such non-payment; and, at most, was merely sufficient to save him from loss on the happening of the contingency. If Thurber failed to pay the $1550, and the lots were sold in consequence, Munger would lose the whole benefit of his purchase; the land he had bought would be sacrificed; and it was proper, therefore, that he should protect himself against paying the consideration money in such an event. It is true Munger might save his lots by paying the $1550, as well as the $1700 which he had agreed to pay; but in that case he would be remitted to a personal claim against Thurber, which it appears would have been worthless; and Munger had a right to guard, in his contract, against such a contingency. The whole consideration he was to pay for his lots was $1700, and he preferred to surrender them up, in satisfaction of the mortgage, relieved from the payment of such consideration, rather than retain them and pay an additional consideration of $1550 beyond his con-

Flagg *against* Munger.

tract. So far from being a penalty, the clause in question was no more than was necessary for his own protection, if the lots were worth only the sum he agreed to pay for them.

It was clearly competent for the parties, Thurber and Munger, to make their own contract; and the holder of the mortgage can avail himself of no right beyond what Thurber would have had against Munger. If Thurber could enforce no claim against Munger, the plaintiff has none. But by the decree in this cause, though Thurber has entirely failed to perform his part of the contract, which was a condition precedent to the payment of any consideration on the part of Munger, Munger is condemned to pay whatever balance of the $1700 is not realized from the sale of the lots. Munger is not only divested of the lots which are sold, and the proceeds applied for Thurber's benefit, but he is decreed to pay the balance of the $1700 on Thurber's debt, from which he has reaped no benefit whatever.

I think it was clearly competent for Munger to protect himself against such a contingency, and that the court is not at liberty to violate or disregard the provision of the contract designed for that purpose.

If I am right in this view, the decree of the supreme court should be modified so far as to relieve the defendant Munger from all personal liability; and Munger should recover his costs in the supreme court, neither party to have costs on this appeal.

All the judges concurred.

Ordered accordingly