By the Court. Bosworth, J.
The judgment appealed from was rendered upon a trial of issues of fact joined between the plaintiff, and David, and Turner respectively, and upon determining, at the same time, the relief proper to be granted as against Townsend & Johnson, on overruling their demurrer to the original and supplemental complaint.
It is insisted that the Court erred at the trial, in refusing to permit the defendant Townsend to interpose an answer to the complaint at that time.
This demurrer was overruled on the 30th of March, 1855, but t liberty was given to him to answer the complaint in twenty days, upon payment of costs. Instead of availing himself of that offer, he appealed from that order to the General Term, and on that appeal the order was affirmed, with costs, on the 10th of November, 1855. This action came on to be tried on the 28th of Eebruary, 1856, and it was during that trial that Townsend tendered his answer. To the decision of the Court refusing to receive it, Townsend excepted.
Even if it be conceded that Townsend had the same time to answer after the decision by the General Term that was given to him by the order of the 30th of March, 1855, he should have tendered his answer within twenty days after the decision of affirmance, by the General Term, or within twenty days from the 10th of November, 1855.—Sands v. M'Clelan, 6 Cowen, 582; Hoadley v. Cuyler, 10 Wend. 593.
By thapfcerms of the order the answer must be put in within twenty days, or the right to answer was gone. None was tendered within that time, nor until after the trial had commenced, *595 upon notice of it duly given to all the defendants. There was no error, which is the subject of an exception, in refusing to permit Townsend to put in an answer at the trial.
The decisions—that the action was triable by the Court ;■ that it should be disposed of at the trial as to all the parties, and by a single judgment; that the Court had jurisdiction of the action; and that the complaint stated facts sufficient to constitute a cause of action;—were correct, and need neither argument nor authority to show their accuracy.
Each defendant appeared by his attorney at the trial. On the trial the agreements of the 24th October, 1853; ¡November 3d, 1853; and December 10,1853; and also the agreement between David & Turner, of the 26th of January, 1854, were produced and read in evidence. The latter is inserted at length in the ease. By the terms of the latter Turner bought, “subject to all the covenants, conditions, and terms contained” in the agreement between Eord & David of the 24th of October, 1853, and as a part of the contract price covenanted to pay the $3,100 to Eord. By the terms of that instrument it was to remain in the hands of H. A. Mott, in escrow, until Turner paid the $3,100 to Eord, or arranged it satisfactorily with him.
That agreement was recorded on the 20th of February, 1854. The agreement of the 28th of January, 1854, between the same parties, was recorded at the same time. The latter transferred the leases and property, “subject, however, to the claim of Samuel Eord of thirty-one hundred dollars, as mentioned in said agreement,” of the 26th of January, and guaranteed that the property was free from encumbrances “ otherwise than in said agreement is set forth, and said Eord’s claim as aforesaid.”
The assignment of each of the leases by David to Turner was, by its terms, subject to the “ covenants, cónditibns, and terms ” of the agreement of the 24th of October, 1853, and to the terms of the agreement of the 26th of January, 1854.
It necessarily follows that Wheeler, when he purchased from Turner, and also that Townsend and Johnson, when they made their several purchases, knew, or had notice of the claims and rights of Eord. There is no agreement or instrument of transfer, from Eord to Turner, which does not recite them.
Townsend and Johnson, by demurring to the complaints, *596 admit the allegations,' that they bought with notice, and Townsend;' in..the same way; admits that he agreed, as a part of the consideration money to be paid by him, to pay to Ford the $3,100.
The plaintiff, is entitled to recover this sum, out of the property,: unless just' claims to deductions have been properly proved which should be allowed, or unless the Court erroneously excluded evidence, in that behalf, which should have been received. Who of the several defendants, are personally liable for its payment, and in what order such liability should be enforced, will be stated hereafter. We will first notice some of the- exceptions taken at the trial.
The answer of David was sworn to on the 25th of January, and of Turner on the 24th of May, 1854, and the Judge in refusing to permit an amendment of their answers, in February, 1856, nearly two years after both of them had re-sold their interest "in the. property; made a decision; which is not the subject of an exception.
Many of the matters, offered to be proved on the part of David and Turner, and embraced in their eleven written offers, and the five additional written offers on the part of Turner, except those which they were allowed to prove, constituted matters of defence not alleged in their answers. On that ground alone, they were inadmissible, and whether they should be permitted .to so amend their answers, as to make such evidence admissible -under them, was, in the most favorable view for the defendants that can be taken of such an application, a matter addressed solely to the discretion of the Judge.
An exception to his decision is not reviewable on this appeal. If it was, we should not regard it as erroneous. ■ ■
David sold .the leases and furniture on the 26th of January, 1854, and Turner on the 10th of the following February. The application was made in February, 1856, to amend answers which had been interposed in May, 1854, more than three months after Turner had sold the property, and had ceased to have any interest in it, except to conduct the business, as he says in his answer, as tenant of Wheeler.
The Judge, under such circumstances, might, with great propriety, refuse to permit such a mass of amendments to be made, *597 the matter of most of which, if not of all of them, must have been known to the defendants when they put in their answers, if it can be supposed that the offers were made in the belief, that the defendants had it in their power to establish the facts which they proposed to prove.
The 2d, 3d, 6th, and 9th offers, and parts of some" of the others, were offers of evidence which would contradict the clear legal import of the agreement of the 10th of December, 1853, and the express terms of the agreement of the 26th of January, 1854.
By the agreement of the 10th of December, 1853, David agreed absolutely, and unconditionally, to pay -$3,100 to Ford, for the interest of the latter in the hotel, as set forth in the previous agreements of the 24th of October and 3d of November, and Ford was to retain all the furniture, not included in the schedule, annexed to the mortgage, which had been executed to Jones.
Ford was to be paid this sum at all events, and was to leave the hotel when it was paid. Whether he was at liberty to remain more than three weeks without charge, if not paid within that period, is a different question. The three weeks, within which it was to be paid at all events, expired with the 31st of December, 1853-
David & Turner, in their contracts of the 26th and 28th of January, 1854, seem to have construed the contract of the 10th of December as requiring David to board Ford free of expense, until the $3,100 was paid; David exacted a covenant from Turner to pay Ford that sum, as being due to him by the contract of the 10th of December.
The Court at Special Term, held Ford chargeable with room rent at $17 a week, from the 3d of April, 1854, to the commencement of this action, which was on the 11th of that month.
Although the Court held that Ford had no strict right to be furnished with board and rooms, without charge, after the expiration of three weeks from the 10th of December, 1853, it also held that no abatement from the $3,100 could be allowed for the use of the rooms occupied by Ford, subsequent to the commencement of this action, for the reason, that the enquiry as to the value of board and of the rooms used had been limited to *598 that date on the trial, on the objection taken by the defendant’s counsel “to any proof subsequent to April 11th, 1854, when suit was brought.”
It is too late for the defendants, after having induced the Court at the trial to make that decision, to insist that it was erroneous.
Ho such inquiry could have been allowed as a matter of right, in behalf of Townsend & Johnson. Instead of asserting by answer a right to reduce the claim of Eord to be paid the $3,100 on account of board and rooms furnished to him by David & Turner respectively, they demurred to the original and supplemental complaints, and admitted their material allegations to be true.
The opinion of the Court at Special Term shows, that the Court came to the conclusions, that David acquiesced in the justice of Ford’s claim to board down to the time that David sold to Turner, and that no allowance was made to David for boarding Ford after the three weeks, for the reason that it had been voluntarily furnished, as being Ford’s strict right.
On the same grounds, it was not allowed to Turner for the period between the date of his purchase and the time he notified Ford that he would not board him longer without being paid for it, which was done on the 3d of April, 1854.
The evidence strongly favors the conclusion that the parties adopted and acted upon that construction of the contracts, until Turner notified Ford to the contrary, on the 3d of April, 1854.
David, on selling to Turner, required a covenant from him to pay Ford $3,100: this was deducted from, and was part of the contract price which Turner was to pay for the property; requiring Turner to pay this sum directly to Ford, in satisfaction of a corresponding amount of the contract price, and transferring the property, subject to Ford’s claim upon it for that sum, in connexion with the other facts, might reasonably bring the Court to the conclusion which it formed.
The supplemental complaint states that Townsend bought and took a transfer, “subject to the plaintiff’s lien and claim thereon for the aforesaid sum of $3,100, which the said Townsend assumed and agreed to pay off and discharge, as a part of the purchase money of said property.”
*599 Townsend & Johnson, by their demurrers, admit the truth of these allegations.
We think there was no error in not making an allowance to David or Turner, for boarding Ford, prior to the time when it was intimated to him that he must pay board in the future, or leave the premises.
But we are of the opinion that Ford had no strict right to be boarded at the expense of David, or of those succeeding to his interest, after the 31st of December, 1853.
Non-payment of the $3,100, within the three weeks, gave Ford a right to rescind the agreement of the 10th of December, 1853. If he had taken that stand, and had his rights adjusted under the two agreements of a prior date, his condition might not have been as favorable as it would be on being paid the $3,100. But he was not obliged to rescind; and if he did not rescind, he was not obliged to waive his lien or release his rights until the $3,100 was paid. But if he chose to retain the agreement, he would be obliged to look to the property, and such persons as had, or might become liable to pay the $3,100, for payment. All that he could demand, as a strict right, was $3,100 and three weeks board.
The substantive cause of action stated in the complaint, consists of a lien upon the property in question, for the $3,100 and interest, with a right to have it satisfied out of the proceeds of the property, on a sale of it under the judgment of the Court.
If the property shall not produce enough to satisfy the lien, Turner and David are severally liable to make good any deficiency.
In the opinion of the Court, accompanying the decision made in October, 1855, upon the demurrers of Townsend and Johnson to the original and supplemental complaint, no discrimination was made between the several liability of David and Turner to make good any deficiency, and that of Townsend. Although it was stated that Townsend was liable to the plaintiff for such a deficiency, yet a decision of that point was not essential to sustain the order then made. Whether the position of Townsend to Ford, as to personal liability, was different from that of David and Turner, does not appear to have been a subject of consideration.
David contracted with Ford to pay to him the $3,100, and, *600 therefore, was personally liable to Eord to make such payment. Turner promised David, who was thus personally liable to Eord, to pay to Ford the same sum. This promise was based upon a valuable consideration, and is one which Ford can enforce for his own benefit, to make good any deficiency in the proceeds of the property to satisfy Ford’s claim. (Halsey v. Reed, 9 Paige 446.)
But the promise of Townsend to pay the $3,100, was made to "Wheeler. It is not alleged that Wheeler was ever personally liable for the payment of it, or promised any one, as part of Ms own contract' of purchase, to pay the $3,100, or any part of it.
King v. Whitely, 10 Paige 465, is in point, and determines that Ford has no personal claim upon Townsend, for any deficiency upon such a state of facts.
In Trotter v. Hughes, 2 Kern. 74, the Court of Appeals, approved of King v. Whitely, as a sound exposition of the law.
: It follows that the judgment must be modified.
We regard the cause of action stated in the complaint, as single. It is a claim to have the $3,100 and interest, or so much of it as may be due", declared a lien upon the property, and ordered, by a judgment of the Court, to be satisfied out of it, by a sale of it, and an application of its proceeds to pay the amount due. . :
The several liabilities of David and Turner, are collateral matters, and may be. enforced to make good any deficiency. (Halsey v. Reed, 9 Paige, 446.)
The judgment should be modified so as to require the proceedings for the appointment of a receiver to be concluded and perfected and the property to be sold by the receiver, and the proceeds applied to satisfy, as far as they will go, the amount due to Ford, and that for any deficiency, execution issue, first against Turner, and on the return of the same unsatisfied, in whole or in part, execution for such deficiency as may then exist, be then issued against David.
As to the questions, whether the action abated, by the transfers made by Ford, pendente lite, or whether it was indispensable, before proceeding to trial, that those who had succeeded to his interests should be made parties, it is sufficient to say that the assignment of the 16th of September, 1854, by Ford to Parmly, *601 and by Ford to Winchester on the 17th of October, 1854, and the appointment of Valentine as receiver of the property of Ford, by order of the 21st of May, 1855, did not abate the action. Code, § 121.
By that section of the Code, it was discretionary with the Court to allow the action to proceed in the name of Ford, or to substitute as plaintiffs those to whom his interest had been transferred. After all the present defendants had been made parties, and after all these transfers had been made, a motion was made that such substitution should be ordered, and it was denied.
Instead of appealing from that order to the General Term, all parties acquiesced in it, so far as the record discloses what occurred.
That order, and suffering the time, within which an appeal could be taken from it, to elapse without appealing; preclude the „ defendants from now raising the question whether other parties should have been substituted as plaintiffs.
The Court having determined that the action should proceed in the name of Ford, it necessarily follows, that all proceedings appropriate to enforce the cause of action stated in the complaint, have been, properly and necessarily, taken and prosecuted by him, and in his own name.
The views stated, dispose of the appeal taken by the plaintiff. The judgment must be modified so as to conform to the views hereinbefore expressed, and in all other respects affirmed. Judgment accordingly.