Masten, J.
In my examination of this case I have considered the rule (now statutory) which prevails in bankruptcy in England, and in this country, that a creditor, having security for his debt, is tobe admitted as a creditor only for the balance of his debt, after deducting the value of his security. I have endeavored to ascertain the principles upon which a court of equity distributes the funds under its control, of an insolvent debtor among his creditors, and administers the estate of a deceased insolvent debtor. And I have come to the conclusion that the rules of equity and the terms of the *220 assignment work out the same solution of the question before me.
The rule in bankruptcy, above stated, had its origin in chancery, and probably in the doctrine of election. The lord chancellor, in the exercise of his summary powers over suitors and the commissioners of bankruptcy, long before any statutory provision, was accustomed to compel creditors to elect between the commission and the other remedies they might have for the recovery of their debts, and to stand to the election. And he restrained the commissioners from admitting a lien creditor, or one having security upon the bankrupt’s effects, as a creditor, or permitting him to prove his debt, until he had exhausted his lien or security.
Subsequently the practice of valuing securities was adopted to avoid delays.
The grounds upon which a lien creditor was compelled in bankruptcy, to give up his security or to exhaust it in the first place and admitted as a creditor for the deficiency only, are thus stated by Lord Eldon in Exp. Smith (2 Rose, 63): “ The reason is obvious: till his debt has been reduced by the proceeds of the sale, it is impossible correctly to say what the actual amount of it is; and with this further consideration that in the event of any doubt attaching upon his right to retain the security, he is enabled in a contest with the rest of the creditors to sustain his disputed title in a situation of predominant advantage.”
From the reason first assigned, it would seem that the rule was one of practice, adopted for convenience rather than on any principle of equity. The reason secondly stated by Lord Eldon is difficult to be fully appreciated.
In Greenwood v. Taylor (1 Russ. & M., 185) Sir John Leach, master of the rolls, expressed the opinion that the rule in bankruptcy had its origin in that principle of equity, which requires a creditor having a lien on two funds, upon one of which only another creditor has a lien, to first exhaust that fund, upon which the single fund creditor has no lien. He applied the rule in the *221 administration of the assets of a deceased insolvent debtor, and compelled a creditor having security by mortgage to deduct its value, and allowed him a dividend only on the balance of his debt. The decision clearly cannot be supported upon the ground on which it was put. For it compelled the creditor having the double fund to make an election prejudicial to his interests.
The plain and well-settled rule which compels one having a lien upon two funds, so to act as not to unreasonably disappoint the just expectations of another, having a lien on only one of them, is a rule of equity and benevolence. It inculcates and enforces the social duty of a creditor having an election, to regard, in making his election, the rights of others, so far forth as it can be done without prejudice to himself.
The rule is enforced either by subrogation, or by marshalling the securities ; and securities are never marshalled, when it will trench upon the rights, or operate to the prejudice of the double fund creditor (Cheesebrough v. Millard, 1 Johns. Ch., 409 ; Brinckerhoff v. Marvin, 5 Id., 320 ; Evertson v. Booth, 19 Johns., 486 ; Van Mater v. Ely, 1 Beas., 271; Bell v. Fleming, Id., 13; Allston v. Munford, 1 Brook. Marsh., 265; Aldrich v. Cooper, 2 Leading Cases in Equity, 56, and notes).
In Mason v. Bogg (2 Mylne & C., 443) the lord chancellor virtually overruled Greenwood v. Taylor. He remarked ; “ with respect to the principle of that case, it is to be observed that a mortgagee has a double security ; he has a right to proceed against both, and to make the most he can of both ; why he should be deprived of this right because the debtor dies insolvent, is not very easy to see.” Upon inquiry, it was found that the rule laid down in Greenwood v. Taylor was in opposition to the practice in all of the master’s offices.
In Bell v. Fleming (supra) the chancellor of Hew Jersey considered this question, although it was not directly before him. He showed that the decision in Greenwood v. Taylor could not be maintained upon the *222 ground upon which it was put by Sir John Leaoii, but expressed the opinion that it could be on the maxim .that equality is equity.
But equity favors and rewards diligence, and gives to creditors their full legal rights. No rule can be sound which treats those rights as varied by the accident of insolvency or of death.
The question before me has been judicially considered in several of the States.
In Amory v. Francis (16 Mass., 308), the question came up in the administration of the estate of a deceased insolvent debtor. The court pronounced the rule in bankruptcy “just and equitable.”
They say that by allowing the security creditor to receive a dividend upon his whole debt, “the creditor holding the security would, in fact, have a greater security than that pledged was intended to give him. For originally it would have been security only for a proportion of the debt equal to its value ; whereas by proving the whole debt and holding the pledge for the balance, it becomes security for as much more than its value, as is the dividend which may be received upon the whole debt.”
This reasoning seems to me to be based upon false premises, and to be illogical.
Ordinarily, the creditor holds the obligation of his debtor to pay him at a certain day, and receives the pledge from his debtor as security for the debtor’s performance. The pledge may be insufficient, but it is as security for the full performance.
The debt or obligation of the debtor is the principal thing, the pledge the collateral or incident. If the debtor makes default, the creditor has the right of election as to his remedies. He may institute a personal action against his debtor upon his obligation, and. by means of judgment and execution thereon collect his debt out of the estate of his debtor, or he may proceed to make his collateral securities available to the payment of his debt. The obligation of the debtor being *223 .the principal, the natural and usual course is to proceed against the debtor in the first instance by a personal action. The contract of pledge is made in view of this right of election as to remedies on the part of the creditor, which is certainly an important right when the security is insufficient. If the collateral securities have not, by some conventional act or intervening equity, become the primary fund for the payment of the debt, there is nothing in reason or natural justice which requires the creditor to proceed against the securities in the first place.
The supreme court of Massachusetts reaffirmed the doctrine of Amory v. Francis in Farnum v. Boutelle, 13 Metc., 159.
In Rourtz v. Hart (13 Iowa, 515), the question arose under a general assignment for the benefit of creditors, and it was held upon the doctrine of double fund, that a creditor having security must exhaust it and be admitted to a dividend upon the deficiency only. It seems from the report that the question was not very much considered.
The question arose in Putnam v. Russell, 17 Vt., 54, and in West v. Bank of Rutland, 19 Id., 403, in insolvency ; in Walker v. Barker, 26 Id., 710; Moses v. Ranlet, 2 N. H., 488, and Findlay v. Hosmer, 2 Conn., 350, in administration, and in Schunks’ Appeal, 2 Barr, 304, and Logan v. Anderson, 18 B. Monr., 114, under assignment for benefit of creditors ; and it was held in all of these cases that a creditor having security is entitled to a dividend on his whole debt pro rata with the general creditors, and may retain his security for the deficiency.
I do not find that the question has been passed upon by the courts of this State.
In Halsey v. Reed, 9 Paige, 446, and Besley v. Laurence, 11 Id., 581, the fund to which resort was compelled was the primary fund.
In Story Equity Jur., 9 ed., § 564, b, it is said, “We believe the general practice in the settlement of *224 insolvent estates is to allow the creditor to prove his whole debt without any regard to any collateral security lie may hold. If the dividend so reduces the debt that the collateral security will more than pay it, the personal representative is bound to redeem for the benefit of the general creditors.”
I have arrived at the conclusion that this is the sound rule of law and equity.
In the case before me I think that the true construction of the assignment leads to the same conclusion. Rich had the right to make preferences, and to provide that creditors holding collateral securities should be admitted to a dividend on their whole debt or only upon the deficiency left after having exhausted the securities which they held.
At the time of the assignment the debt now due to Jervis and Sherman was due from Rich to the State of Mew York and the Erie County Savings Bank, to whose rights Jervis and Sherman have since succeeded.
The assignment directs that the assigned property be converted into money, and that the money “ be divided equally among all the creditors of said Rich in proportion to the amounts, due and owing by him to them respectively.”
Mow what was “ the amount due and owing” by Rich to the State of Mew York and to the Erie County Savings Bank respectively at the time of the assignment % or in other words for what amount could they have respectively recovered judgment against Rich ? Why plainly for the whole amount he owed them, without deduction on account of the securities in the hands of Jervis and Sherman. The securities had not then been applied either by agreement or the act of either party in part payment of the debt, and the interest or right of redemption of Rich in the securities passed to the assignees. The portion or interest in the assigned property which passed to the assignees in trust for the State of Mew York and Erie County Savings Bank was fixed by the assignment upon its delivery.
*225 I decide that Jervis and Sherman are entitled to dividends npon their whole debt, without deducting the securities held by them, or the proceeds thereof.