61 427
137a 228
61 427
88 430
61 434
8ap182

---

## FRANK B. JENKS, RESPONDENT, v. THOMAS QUINN, APPELLANT.

*Estoppel — failure of one, only secondarily liable for a mortgage debt, who is present at a sale of the mortgaged premises, to demand the sale of the proper parcel — damages recoverable upon a covenant of warranty.*

The loan commissioners of a county held a mortgage upon certain land, the payment of which had been assumed by the owners of the mortgaged premises, John Curtin and Daniel Curtin. The owners subsequently divided the property by instruments of conveyance, by which Daniel agreed to save John harmless from said mortgage as to the portion of the property deeded by Daniel and his wife to John. John thereafter deeded this portion to one Quinn. Quinn and wife, by warranty deed, conveyed to one William S. Jenks, who conveyed to one Frank B. Jenks.

Subsequently a sale was had under a foreclosure of said mortgage, notice of which was given to the parties in interest. The loan commissioner making the sale intended to sell first that portion of the whole tract which in the partition had been deeded by John to Daniel, and which was of sufficient value to pay said mortgage. By mistake he sold the portion which had come to Frank B. Jenks,

William S. Jenks knew of the provision in the deed from Daniel to John making Daniel's portion primarily liable. At the sale neither Frank B. Jenks nor William S. Jenks, who were present, requested that the portion set off to Daniel be sold first.

In an action brought by Frank B. Jenks, who had been ejected by the purchaser under the foreclosure sale, against Quinn to recover the value of the premises under the covenant of warranty in the deed given by Quinn, the evidence showed that William S. Jenks had served upon the defendant Quinn, personally, a notice of the sale and requested him to be present at the sale and protect the plaintiff's portion of the premises, which Quinn had promised to do.

*Held,* that the action could be maintained.

That the failure of the commissioner to sell the piece of land primarily liable for the debt did not render the sale void, and that the purchaser at the sale acquired a valid title to the property purchased.

That the doctrine of a sale in the inverse order of alienation was not involved, this being merely a question of the sale of a parcel made by the contract between

its owners, secondarily liable for a mortgage debt, before selling the parcel primarily liable.

That the plaintiff had a right to rely on the promise of the defendant Quinn to be present at the sale and protect him, and that the plaintiff's failure to demand that the parcel not sold be first sold did not constitute an estoppel, nor did it relieve the defendant from liability under his covenant of waranty of title.

That the matter might have been held otherwise had the question arisen between the plaintiff and the purchaser.

The plaintiff was awarded as damages the value of the premises at the time of his eviction.

*Held*, that this was proper as this sum was less than the consideration named in the deed from the defendant to William S. Jenks.

Where, by the foreclosure of a mortgage, and a sale thereunder, there has been an absolute failure of title, the rule of damages is the value of the premises at the time the defendant conveyed, as evinced by the consideration named in his deed, with interest from the date at which the plaintiff is evicted, not to exceed six years.

APPEAL by the defendant Thomas Quinn from a judgment of the Supreme Court, entered in the clerk's office of Cortland county on the 13th day of January, 1891, in favor of the plaintiff, after a trial before the court without a jury at the Cortland Circuit.

*A. P. Smith*, for the appellant.

*W. C. Crombie*, for the respondent.

MARTIN, J.:

This action was upon a covenant of warranty contained in a deed from the defendant to the plaintiff's grantor. The plaintiff was evicted by a purchaser, under a foreclosure and sale of the premises, upon a mortgage given to the loan commissioners of Cortland county to secure the payment of the sum of $496 and interest. The mortgage was given in June, 1837, by Jonathan and Ransom Scott, who were then the owners of the premises mortgaged, which included the premises in question with other lands then owned by them. The mortgaged premises, with others, were conveyed by Ransom Scott and wife to Charles Pardee, March 12, 1867. This deed was made subject to the foregoing mortgage, which the grantee assumed and agreed to pay as a part of the purchase-price. The deed was recorded April 15, 1867. Pardee conveyed to John and Daniel Curtin 137 acres of the mortgaged premises on April 1, 1868, subject to such mortgage, which the grantees covenanted to pay. This deed was recorded May 9, 1870.

Subsequently John and Daniel Curtin divided the premises so purchased, Daniel and wife conveying to John fifty-six and one-half acres thereof by deed dated October 2, 1871, which deed contained a covenant that Daniel should save John " harmless from, and pay off and liquidate," the mortgage in question; and he also assumed by such deed to pay $1,535.35 of another mortgage held by Pardee, which was a lien thereon. This deed was recorded December 11, 1871.

On the day that the last-mentioned deed was given, and in consideration thereof, John Curtin and wife conveyed to Daniel seventy-nine acres of the mortgaged premises, John agreeing to pay $1,452.95 of the last-mentioned mortgage. This deed was also recorded December 11, 1871. On December 8, 1871, John Curtin and wife conveyed the fifty-six and one-half acres owned by them to defendant, which deed was recorded on December 11, 1871. Afterwards, and on the 8th day of March, 1873, the defendant and wife conveyed the fifty-six and one-half acres to William S. Jenks, the purchase-price, as stated in the deed, being the sum of $2,200, the grantee assuming and agreeing to pay on the Pardee mortgage the sum of $1,384.32. This deed contained the covenant, which is the foundation of this action.

On February 4, 1881, William S. Jenks and wife conveyed the premises in question to the plaintiff, the consideration for such conveyance being the sum of $1,400, and an agreement by the grantee to give the grantor and his wife a home with him as long as he should keep the place, or during their lives, the plaintiff assuming the amount due on the Pardee mortgage, which was about $1,200, as a part of the purchase-price, the remainder to be paid to his grantor.

Several years before the foreclosure of the loan commissioners' mortgage William D. Hunt became the owner of that portion of the mortgaged premises which was deeded to Daniel Curtin. From the time when Daniel and John Curtin divided the premises, until October 1, 1886, Daniel, and those who acquired title under him, paid the interest on the loan commissioners' mortgage, except that in one year Hunt, who was then the owner of the Daniel Curtin premises, induced the defendant to pay a portion thereof, which he afterwards recovered of Hunt in an action against him brought for that purpose.

On or about November 1, 1887, the loan commissioners of Cortland county instituted a proceeding to sell the premises covered by such mortgage, in pursuance of the statute relating to such mortgages, and a sale was had therein on February 7, 1888. Notice of the time and place of such sale was served upon both the plaintiff and defendant. The plaintiff and his grantor were present, but the defendant was not. By reason of a mistake in the search obtained by the loan commissioners, it appeared that the owner of the plaintiff's premises was to pay such mortgage, when, in fact, it was the part owned by Hunt that was primarily liable therefor, according to the provisions in the deed from Daniel to John Curtin. The loan commissioner making the sale intended to sell the piece that was thus liable, but by reason of such mistake he sold the other. The plaintiff's grantor knew of the provision in the Daniel Curtin deed. The premises owned by Hunt were of sufficient value so that if they had been first sold, a sufficient sum would have been realized to pay said mortgage debt, interest and costs. At the sale neither the plaintiff nor his grantor requested or demanded that the premises thus primarily liable should be first sold, but stood by and permitted the premises in question to be sold.

The plaintiff's evidence tended to show that when the defendant conveyed the premises to the plaintiff's grantor, the latter had heard of this loan commissioners' mortgage, and the defendant then assured him that it was for Daniel Curtin to pay, and would be paid; and stated that he would see that the mortgage was paid and discharged, and subsequently promised to pay the mortgage and have it discharged. The plaintiff's evidence also tended to show that his grantor served a notice of the sale upon the defendant personally, and requested him to be present and protect the premises from such sale, and he promised to do so.

Upon the sale the premises were purchased by Frank L. Cuddeback for $635 52, which was the amount due upon the mortgage, including interest and costs. After the sale the purchaser went to the premises and asked the plaintiff to vacate them, whereupon he surrendered possession to the purchaser. After such surrender, the purchaser leased the premises to the plaintiff's mother, who was the wife of the plaintiff's grantor.

The plaintiff's proof was that the premises in question were worth at

the time of the sale, and when he was evicted, the sum of $1,906.19. The court found that that was the value, and that the plaintiff was entitled to recover that sum, with interest, from February 7, 1888, besides costs, and directed judgment accordingly.

The appellant contests the validity of this judgment upon the grounds:

(1.) That the sale, not having been made in the inverse order of alienation, was void, and that plaintiff and his grantor, having notice that the lands sold were not primarily liable for the mortgage debt, and having been present and permitted them to be sold, when the lands which were primarily liable were of sufficient value to have satisfied the debt and costs, were estopped from claiming damages caused by their neglect.

(2.) That if the defendant was liable, the damages awarded were in excess of the amount to which the plaintiff was entitled.

We do not perceive how the question of selling the mortgaged premises in the inverse order of alienation is involved in the case. The question here relates to the validity of the sale of a portion of the premises which, under the contract between the owners, had become only secondarily liable for the mortgage debt before selling the part that was primarily liable therefor. That the loan commissioner, in making this sale, did not first sell the portion of the premises, which, by the conveyance between the former owners, was made primarily liable for the mortgage debt, is undenied. That such should have been the order of sale we have no doubt, notwithstanding the fact that the provisions of the statute requiring property thus mortgaged to be sold in the inverse order of alienation has been repealed. (Laws 1837, chap. 150; Laws 1856, chap. 3; Laws 1863, chap. 73, § 27.) The well-recognized principles of equity required the premises primarily liable to pay such debt to be first sold, and we have no doubt that a sale in that order could have been enforced if the plaintiff, his grantee, or the defendant had demanded it. (*Conaughty* v. *Nichols*, 42 N. Y., 83.) Where the owner of mortgaged premises sells a portion thereof to a purchaser who assumes and agrees to pay, as a part of the purchase-price, the whole or a part of the mortgage debt, the purchaser is legally and equitably bound to pay off and satisfy such mortgage. By such assumption he becomes the principal debtor, and the land conveyed to

him the primary fund out of which the mortgage is to be paid, the mortgagor remaining simply a surety, and the remainder of the property being liable only secondarily. The purchaser, therefore, is bound to protect the mortgagor and his grantees from all liability on account of the mortgage debt. And should the mortgagor or his grantee be compelled to pay the mortgage debt or any part thereof, he will be entitled to an assignment of such mortgage to enable him to obtain satisfaction out of the land of the party who assumed the payment thereof. (*Torrey* v. *Bank of Orleans,* 9 Paige, 649; *Wilcox* v. *Campbell,* 106 N. Y., 325; *Halsey* v. *Reed,* 9 Paige, 446.)

But, as we have already seen, neither the plaintiff nor his grantor, or the defendant, requested or demanded of the loan commissioner that the premises owned by the grantee of Daniel Curtin should be first sold. The effect of such omission is one of the questions we are required to consider on this appeal. No question is raised as to the regularity of the proceedings before, upon or after such sale, except that the plaintiff's premises should not have been first sold. That they were still subject to the mortgage there is no doubt. Did the failure of the commissioner to first sell the piece primarily liable for the debt render the sale void? We think not. While it is doubtless true that, if the plaintiff, his grantor or the defendant had demanded or requested the commissioner to sell that portion of the premises first, it would have been his duty to do so, and the right to have the sale thus made could have been enforced; still, in the absence of such demand, we think the sale was valid and passed the title to the purchaser, at least until vacated or set aside. It follows then, that, as the purchaser acquired a good and valid legal title to the premises, which was paramount to that of the plaintiff, the purchaser was entitled to possession. The plaintiff was justified in surrendering possession, and was entitled to recover on the covenant of warranty contained in his grantor's deed, unless he had been guilty of some act which would bar such a recovery.

The contention of the appellant is, that the plaintiff's right to maintain this action was barred by the action of himself and his grantor in standing by and permitting, without objection, the sale of their premises first, when, if they had asserted their right, the premises would not have been sold. We think it is quite obvious

that if the plaintiff or his grantor had objected to such sale and requested that the other portion of the mortgaged premises should be sold first, the commissioner would have discovered his error and sold the premises in the proper order.

This brings us to the question whether the plaintiff owed to the defendant the duty to make this demand, and if so, whether his omission to discharge it relieved the defendant from his liability upon the covenant, which was the basis of this action. On the trial the plaintiff's evidence tended to show, and the court in substance, found, that the plaintiff's grantor served upon the defendant a notice of such sale and requested him to be present and protect the plaintiff's premises from such mortgage, and he agreed to be present. Under this evidence we are inclined to hold that the plaintiff and his grantor had a right to rely upon the agreement of the defendant to be present and protect the premises from sale. That they would not have been required to attend under such circumstances, we think, is quite clear. (*Wilcox* v. *Campbell*, 106 N. Y., 325.) We are also of the opinion that if they went there relying upon the defendant's promise, without ascertaining their rights or learning that any action upon their part was necessary to protect their premises from sale, and in consequence thereof omitted to make the proper request, the defendant cannot complain, and that such omission did not bar a recovery in this action.

We have been cited to no case, or doctrine of the law of estoppel, which would justify us in holding, under the circumstances developed by the evidence in this case, that the plaintiff was estopped from maintaining an action upon the defendant's covenant of warranty, because he was present at such sale and did not demand that the other portion of the mortgaged premises should be first sold. It will be observed that the question here does not arise between the plaintiff and the purchaser. If such had been the question, it may be that the plaintiff, if he was silent or passive when he ought to have spoken or acted, might. as to the purchaser or those claiming under him, have been estopped. Here the question is between the plaintiff and a former grantor of the premises. "The party will, in many instances, be concluded by his declarations or conduct which have influenced the conduct of another to his injury. The

party, in such cases, is estopped from denying the truth of his admissions. But, to the application of this principle with respect to title to property, it must appear, first, that the party making the admission by his declarations or conduct was apprised of the true state of his own title; second, that he made the admission with the express intention to deceive, or with such careless and culpable negligence as to amount to constructive fraud; third, that the other party was not only destitute of all knowledge of the true state of the title, but of the means of acquiring such knowledge; and, fourth, that he relied directly upon such admission, and will be injured by allowing its truth to be disproved. The primary ground of the doctrine is, that it would be a fraud in a party to assert what his previous conduct had denied, when, on the faith of that denial, others have acted. The element of fraud is essential, either in the intention of the party estopped, or in the effect of the evidence which he attempts to set up." (Herman on Estoppel, § 966, and cases cited in note; see, also, Bigelow on Estoppel, § 543 *et seq.*)

It is quite manifest, we think, that the doctrine of estoppel has no application in this case, as practically none of the conditions existed which were essential to create an estoppel.

Hence we find nothing in the plaintiff's omission to request the commissioner to sell the other part of the premises first which would constitute a defense to this action. While we are not at all inclined to hold that the defendant has no remedy for the injury he has sustained, or may sustain, by reason of the manner in which such sale was made, yet, we do not think it rests in the alleged defense to this action.

This brings us to the consideration of the question of damages. The court awarded to the plaintiff the value of the premises in question at the time of his eviction. The amount awarded was $1,906.19, and interest from February 7, 1888, which was when the plaintiff was evicted. The rule of damages in this State, in an action for the breach of a covenant for quiet enjoyment, in the absence of fraud, where the eviction is based upon an absolute title in another, is the amount of the purchase-money, with interest from the time the plaintiff loses the *mesne* profits, not to exceed six years. (*Staats* v. *Ten Eyck*, 3 Cai., 111; *Pitcher* v. *Livingston*,

4 Johns., 1; *Bennet* v. *Jenkins*, 13 id., 50; *Baldwin* v. *Munn*, 2 Wend., 399; *Dimmick* v. *Lockwood*, 10 Wend., 142; *Kinney* v. *Watts*, 14 id., 38; *Kelly* v. *The Dutch Church of Schenectady*, 2 Hill, 106; *Hunt* v. *Raplee*, 44 Hun, 149, 155.)

The covenant of warranty contained in the deed from the defendant to the plaintiff's father was a covenant which ran with the land for the protection of the owner in whose time the breach occurred, and passed with the estate by purchase to the plaintiff. (Rawle on Covenants for Title, § 213 *et seq.*, and cases cited.) The plaintiff's right of action being under and by virtue of the covenant contained in the deed from the defendant to plaintiff's grantor, it may be that the true rule of damages would be the amount of the purchase-price named in the defendant's deed. There is, however, a conflict in the decisions of other States upon this question. By some it is held that the measure of damages in such a case is the consideration paid by the original covenantee, and not the price paid by the plaintiff. (*Lowrance* v. *Robertson*, 10 Rich. [S. C.]; 8; *Hopkins* v. *Lane*, 9 Yerg. [Tenn.], 79.) By others, that the measure of damages is the price paid by the plaintiff, not exceeding the amount of consideration received by the defendant. (*Moore* v. *Frankenfield*, 25 Minn., 540; *Crisfield* v. *Storr*, 36 Md., 150; *Mette* v. *Dow*, 9 Lea. [Tenn.], 100; *Williams* v. *Beeman*, 2 Dev. [N. C.], 483.) Perhaps it may be said that the weight of authority in other States is adverse to the rule first stated.

In the case of *Petrie* v. *Folz* (54 Supr. Ct. Rep. [22 J. & S.], 223), which was somewhat similar to the case at bar, SEDGWICK, Ch. J., in delivering the opinion of the court, said: "There remains to be said that the defendant was not correct in his claim, that the value of the land was to be deemed the amount of consideration recited in the deed to plaintiff, that is, $1. The warrantor is liable according to the value of the land at the time of the warranty, which is conclusively fixed at the amount of the consideration of the sale. (Rawle on Cov., 243; Sedgwick on Dam. [5th ed.], 168, and the cases cited in these books from the State of New York.) Evidently, the warrantor should at least return such part of the consideration as he appropriated, as represents the value of the land to which he gave no title."

In *Dickson* v. *Desire's Administrator* (23 Mo., 166), it is said : "On a covenant of warranty or seizin, where the transaction remains between the original parties, the measure of damage is the value of the land at the time of the sale, as fixed by the parties themselves in the price given and received. When, however, the original grantee has sold the land to another, and the second purchaser has been evicted, the damage he has sustained is the value of the land at the time of his purchase, and his right of recovery against the first grantor upon the original covenant must, of course, be limited to his actual loss, although it cannot exceed the liability of the first vendor to his immediate grantee."

If, therefore, the rule be, either, that the plaintiff should recover the value of the premises, or, that he should recover the amount of the consideration named in the defendant's deed, it would seem to follow that the defendant could not justly complain, as the plaintiff recovered only the value of the premises, which was less than the consideration named in the defendant's deed.

The appellant, however, makes the further claim that the plaintiff was only entitled to recover the amount of the mortgage, interest and costs, and at most the judgment should have been only for the sum of $635.52. It is said in Devlin on Deeds (§ 934) : "If the eviction is by a paramount lien, damages may be recovered to the extent of the lien, if this does not exceed the amount that could be recovered for an eviction for failure of title." Many cases are cited as sustaining this doctrine. When, however, the cases cited are examined, it will be found that they arose in States where the local laws, regulating the foreclosure of mortgages, provide that even after entry by the mortgagee upon the land for that purpose, it may still be redeemed within three years or some other period by payment of the mortgage debt and costs, and, hence although the purchaser may have been actually evicted by the mortgagee, yet, if the latter held the possession only under a conditional judgment, or if it be otherwise defeasible by payment of the amount due on the mortgage, with costs, the damages will be limited to that amount. In other words, what is held in these cases is that so long as the purchaser still has a legal right to regain the estate by payment of a certain amount, he can recover no greater sum. This is the

doctrine held in the cases of *Norton* v. *Babcock* (2 Met., 510; *White* v. *Whitney* (3 id., 89) ; *Donahoe* v. *Emery* (9 id., 63) ; *Tufts* v. *Adams* (8 Pick., 547) ; *Furnas* v. *Durgin* (119 Mass., 500) ; *Curtis* v. *Deering* (12 Me., 499) ; *Lloyd* v. *Quimby* (5 Ohio St., 262). And when we examine the case of *Winslow* v. *McCall* (32 Barb., 241), which is a case much relied upon by the appellant, we find that it establishes the same doctrine. In that case the eviction was by a mortgagee in possession. The mortgage had not been foreclosed, and hence there had been no absolute failure of title. Under these circumstances, the court held that the measure of damages was the amount due upon the mortgage, with interest from the commence-ment of the action. We cannot see how these cases aid the appellant, as in the case at bar there had been a foreclosure which resulted in an absolute failure of the plaintiff's title.

On the other hand, in the case of *Elder* v. *True* (32 Me. ,104), where a mortgagor of land conveyed premises by a deed of warranty, it was held that his grantee was under no obligation to redeem, and if the mortgage was foreclosed, the measure of damages to be received by the grantee was the value of the land and interest. In *Stewart* v. *Drake* (9 N. J. L. [4 Halsted], 139), it was held that where, by reason of an antecedent mortgage, the grantee was evicted, the rule of damages for a breach of covenant for quiet enjoyment and warranty was the same as if the grantee had been evicted by reason of a total want or failure of title in the grantor, that is, the amount of the consideration money, with interest.

In *Miller* v. *Halsey* (14 N. J. L. [2 Green], 48), it was held that the refusal of a plaintiff to buy in a paramount title or incumbrance, even when offered to him upon moderate terms, was no waiver of the covenent for quiet enjoyment, and would not bar a recovery thereon after eviction.

In *Wilcox* v. *Campbell* (106 N. Y., 325), it was held that the rule which requires a party exposed to injury or damage to make the loss as small as he reasonably can, does not require the grantee to advance the money to pay a mortgage for the purpose of protecting himself or his land.

We think the authorities bearing upon the question do not sustain the claim of the appellant, and that, as the rule adopted by the court

was as favorable to the defendant as he was entitled, the judgment in this action should not be disturbed.

We, therefore, are of the opinion that the judgment should be affirmed.

HARDIN, P. J., and MERWIN, J., concurred.

Judgment affirmed, with costs.