THOMAS QUINN, Appellant, *v.* FRANK B. JENKS and Others, Respondents.

*Equitable relief — an issue tried in a former action, not considered again — when a judgment will not be set aside for fraud — ignorance of facts, when not available as a defense — purchasers in good faith protected — liability of one purchasing a part of premises and promising to pay a mortgage upon the whole, to one purchasing another part — one who seeks to enforce the liability must have paid the debt.*

In an action brought to set aside a sale in foreclosure, to obtain an order for a resale, to set aside a judgment recovered in a former action brought by the defendant against the plaintiff upon a warranty of title and to recover damages as for fraud, it appeared that at the time of the trial of the former action all the facts set forth in the present complaint would have been available as a defense to the former action; that the present plaintiff knew or might by diligence have learned at that time all the material facts; that instead of attacking a sale made under a loan commissioners' mortgage (which sale he claimed was illegal because the equitable principle as to sales in the inverse order of alienation had been violated) he elected to defend upon other grounds, carried his appeal to the Court of Appeals, and did not attempt to enforce his equities specifically against the land in question until the rights of *bona fide* purchasers had attached; there was no proof of fraud.

*Held,* that he was not entitled to equitable relief;

That the present plaintiff having in the former action fully raised an issue and having had an opportunity to try it, that issue could not be tried again;

That the court had no authority to vacate a judgment of a court of co-ordinate jurisdiction for fraud, where there was no proof that the defendant in the former action was prevented by any act or contrivance of the plaintiff in the former action, nor by any accident not involving his own negligence or that of his agents, from prosecuting his defense in the former action;

That ignorance of facts constituting a defense does not excuse a party from omitting to make the defense, unless it can be shown that he could not have acquired the information by diligence;

That as it appeared that purchasers in good faith of the premises had gained rights, the situation being changed, the plaintiff was not entitled to equitable relief affecting the premises themselves.

In 1871 Daniel Curtin and John Curtin were the owners of 135 acres of land which were subject to a loan commissioners' mortgage. At that date Daniel Curtin conveyed to John Curtin about fifty-six acres of this land, and covenanted to save John harmless from the loan commissioners' mortgage; at the same time John Curtin conveyed to Daniel Curtin about seventy-nine acres of this land, and no mention was made in this deed of the loan commissioners' mortgage. John Curtin conveyed the fifty-six acres to Thomas Quinn, and agreed to save him harmless from the loan commissioners' mortgage. Frank B. Jenks, mesne grantee from Quinn of the fifty-six acres, was ousted from possession by a sale upon a

foreclosure of the loan commissioners' mortgage had in 1888. At this sale the fifty-six acres were sold first, and realizing the amount of the mortgage, exonerated the seventy-nine acres.

In an action brought by Jenks against Quinn on his covenant of warranty, in which Quinn answered that the sale was inequitable, and that the seventy-nine acres should have been first sold, Jenks recovered a judgment against Quinn, which Quinn has not paid.

At the time of the foreclosure the seventy-nine acres were owned by William D. Hunt, who had purchased the same upon the foreclosure of a mortgage (given after the loan commissioners' mortgage and in renewal thereof), which covered part of the land and secured part of the amount secured by a mortgage covering the whole tract, and given before the loan commissioners' mortgage, and before the Curtins got title, and had given no express covenant binding him to pay the loan commissioners' mortgage.

The present action, to which Hunt was made a party, but Daniel Curtin was not, was brought by Quinn to set aside the sale upon the foreclosure of the loan office mortgage, and also the judgment in *Jenks* v. *Quinn.*

*Held,* that the plaintiff could not recover against Hunt;

That the rule that where a purchaser of a portion of mortgaged premises agrees to pay the whole mortgage he is liable to the purchaser of the remainder for the damages resulting from a failure to pay the mortgage and the consequent sale of the whole property, and that grantees of the purchasers who have assumed his obligations will also be so liable, did not apply;

That Hunt had not agreed to pay the loan office mortgage, and that Quinn had paid nothing as yet upon the liability which he was now attempting to enforce.

APPEAL by the plaintiff, Thomas Quinn, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of Cortland on the 8th day of January, 1895, upon the decision of the court rendered after a trial at the Cortland Special Term dismissing the complaint upon the merits.

*A. P. Smith,* for the appellant.

*W. C. Crombie,* for the respondents.

MERWIN, J.:

On the 20th of June, 1837, Jonathan and Ransom Scott, being then the owners of 150 acres of land in the town of Scott in the county of Cortland, gave a mortgage thereon to the loan commissioners of Cortland county for the sum of $496. The foreclosure of this mortgage and the sale thereon on the 7th of February, 1888, of fifty-six acres, a portion of the mortgaged premises then owned by the defendant Frank B. Jenks, have given occasion to this litiga-

tion. The purchaser at the sale was the defendant Frank L. Cud-deback, who thereupon took possession of the property, dispossess-ing Jenks. The latter thereafter, and on or about April 9, 1888, commenced an action in the Supreme Court against Thomas Quinn, the plaintiff in the present action, upon his warranty of title to Wil-liam S. Jenks, the grantor of Frank P. Jenks. That action was tried in October, 1890, at the Cortland Circuit before the court without a jury, and a decision was rendered in favor of the plaintiff therein for the sum of $1,906.19, the value of the premises at the time of the eviction, with interest and costs. Judgment in accord-ance with the decision was entered on January 13, 1891. The defendant therein appealed to the General Term, where the judg-ment was affirmed in November 1891 (61 Hun, 427), and judgment of affirmance was entered on December 4, 1891. An appeal was taken to the Court of Appeals on the 21st of January, 1892, the return being filed March 7, 1892. The Court of Appeals affirmed the judgment (137 N. Y. 223) and judgment of affirmance was entered on the 13th of March, 1893.

On or about the 16th of March, 1892, the present action was com-menced, a notice of pendency being filed on the 21st of March, 1893. Its object, as indicated by an amended complaint, verified July 19, 1893, is to set aside the foreclosure sale, and obtain an order for a resale; set aside the judgments in the case of *Jenks* v. *Quinn*, and in the mean time restrain their collection, and recover damages of certain of the defendants. The gravamen of the complaint is fraud and conspiracy in bringing about the sale on the foreclosure of the fifty-six acres, when in fact as the plaintiff claims another portion should have been first sold.

On the 12th of March, 1867, Ransom Scott, assuming to be the entire owner of the 150 acres covered by the loan mortgage, con-veyed the same to Charles Pardee, subject to the mortgage which Pardee assumed as part of the purchase price. On April 1, 1868, Pardee conveyed about 135¼ acres to John Curtin and Daniel Curtin, subject to the mortgage which the Curtins covenanted to pay. At the same date Pardee, by warranty deed, conveyed to George W. Hunt about sixteen acres, being the balance of the 150 acres, except about two acres. Nothing was said in this deed about the loan mortgage. The Curtins gave back to Pardee on the property con-

veyed to them a mortgage dated April 1, 1868, and recorded May 3, 1872, for $2,986.41, part of the purchase money. On October 2, 1871, Daniel Curtin gave to John Curtin a quit-claim deed of fifty-six and one-half acres, being that part of the farm on the west side of the highway, and John Curtin deeded to Daniel seventy-nine acres, being that part of the farm on the east side of the highway. These deeds were both recorded on December 11, 1871. In the deed from Daniel to John there was the following clause : " And the party of the first part herein covenants and agrees to save the party of the second part harmless from and pay off and liquidate a certain loan mortgage of four hundred and ninety-six dollars upon the premises herein described." The party of the first part also covenanted to pay the sum of $1,535.35 on the mortgage to Pardee. In the deed from John to Daniel the party of the first part covenanted to pay on the Pardee mortgage the sum of $1,452.95, and nothing appears to be said about the loan mortgage.

On December 8, 1871, by warranty deed recorded December 11, 1871, John Curtin conveyed to Thomas Quinn, the present plaintiff, the fifty-six acres, and in this deed the party of the first part covenanted to save the party of the second part harmless from the loan commissioners' mortgage, and the party of the second part agreed to pay on the Pardee mortgage the sum of $1,334.38. On March 8, 1873, Quinn, by warranty deed recorded February 1, 1874, conveyed the fifty-six acres to the defendant William S. Jenks for the consideration as therein expressed of $2,200, and the party of the second part agreed to assume and pay on the Pardee mortgage the sum of $1,384.32. On the 9th of February, 1874, William S. Jenks gave to Pardee a mortgage on the fifty-six acres for the sum of $1,270.43, and at the same date Daniel Curtin gave to Pardee a mortgage on the seventy-nine acres for the sum of $1,321.57. These two mortgages were given to take up the mortgage given to Pardee in 1868, and covering both pieces, and that was discharged of record on February 25, 1874. The mortgage given by Daniel Curtin was assigned to the defendant William D. Hunt, and foreclosed, and upon the sale on August 9, 1878, Hunt became the purchaser and went into possession and so continued until he conveyed to the defendant Childs after the sale on the loan mortgage.

On February 24, 1881, William S. Jenks by warranty deed con-

veyed the fifty-six acres to the defendant Frank B. Jenks subject to the mortgage given in 1874 to Pardee, and then held by the defendant Isaiah Cuddeback, which Frank B. Jenks assumed and agreed to pay. This mortgage on the 7th of February, 1888, was held by the defendant Frank L. Cuddeback.

Upon the sale on the 7th of February, 1888, under the loan commissioners' mortgage, the fifty-six acre piece was first put up and was bid off by Frank L. Cuddeback for just the amount of the mortgage, interest and costs, thus releasing entirely the seventy-nine acres. After the sale and on the same day William D. Hunt, by warranty deed dated and recorded that day, conveyed to the defendant E. W. Childs the seventy-nine acres with other property for the consideration of $3,000, and April 1, 1890, Childs, by warranty deed recorded May 27, 1890, conveyed the seventy-nine acres to the defendants Sweeney, who now own the same. Frank L. Cuddeback, the purchaser on the sale, conveyed the fifty-six acres to defendant Isaiah Cuddeback by deed dated June 6, 1890, and recorded June 10, 1890, and he, by warranty deed dated the 7th of March, 1892, and recorded June 3, 1892, conveyed the same to the defendant Anderson, who now owns the same.

In the action against Quinn on the warranty, the defendant therein alleged, among other things, that by the covenant in the deed from Daniel to John Curtin, the seventy-nine acres became primarily charged with the whole of the loan mortgage; that the charge continued down to the time of the sale and was known to Frank B. Jenks as well as to Hunt, the owner of the seventy-nine acres; that Jenks was present and took part in the sale; that the holders of the loan mortgage sold the fifty-six acres first at the request of Hunt and with the consent of Jenks, and without any objection from him or demand that the seventy-nine acres should be first sold, and that Jenks is estopped from claiming on the warranty. It appeared on the trial that Quinn was duly notified of the sale and promised Jenks to be present and protect him as to the fifty-six acres; that he failed to be present on account of sickness; that the loan commissioners sold the fifty-six acre piece first, under the mistaken idea that it was first liable. It was held that the failure to sell the piece primarily liable did not make the sale void and that the purchaser acquired a valid title, and that the failure of Jenks to

object at the time of the sale did not estop him from claiming on the covenant, although, if he had objected, the result would have been different. In the Court of Appeals, upon the affirmance of the judgment, importance was given to the circumstance that it was not found that Jenks had any actual knowledge of the covenant in the deed from Daniel Curtin or its legal effect, and it was held that Jenks was not charged with constructive notice from the record of Daniel's deed of the covenant herein.

The present action is against the owners of both pieces at the time of the sale, and those to whom conveyances of either part have been made since. The loan commissioners are also parties. It was held by the Special Term: "(1) That, upon the evidence and proofs in this case, the plaintiff is not entitled to any equitable relief in this action; (2) that, at the time of the trial of the action of Frank B. Jenks against the plaintiff, Thomas Quinn, and the procurement of the judgment sought to be set aside by the plaintiff by this action, all the facts set forth by the plaintiff in his complaint herein would have been available and admissible as a defense in said action; that the plaintiff knew all of said facts at the time, or could have acquired the information by diligent and careful labor in the preparation of said case for trial, but negligently omitted to do so, and persisted upon the defense interposed by him in said action, and prosecuted appeals from the decision rendered therein to the Court of Appeals, and took no action to enforce his claimed equities until after the title to both parcels of land covered by the loan mortgage had passed by sale and conveyance to other parties, who became purchasers thereof in good faith and for value, without notice of the equities which plaintiff asserts; (3) that the matters presented by the plaintiff's complaint in this action were passed upon, or might have been passed upon, presented and considered in said action; (4) that there was no fraud practiced on the trial of said action by the plaintiff, Frank B. Jenks, or any other person on his behalf, or for him in the procurement of the said judgments by which the said Thomas Quinn, defendant, was prevented from interposing or availing himself of the facts set forth in the complaint herein as a defense in said action; (5) that there are no facts proven in this action upon which the foreclosure sale under the loan mortgage should be set

aside; (6) there are no facts proven in this action upon which the judgment of *Frank B. Jenks* v. *Thomas Quinn*, or the foreclosure of the loan mortgage, ought to be set aside; (7) that this action, being an action in equity, and Jenks being free from any fraud or intentional injury to the plaintiff, this action cannot lie against any of the defendants herein; (8) that the judgments recovered by Frank B. Jenks against the said plaintiff are valid and legal judgments, and the said Frank B. Jenks, plaintiff, is entitled to enforce and collect the same."

There is evidence tending to show that, before the sale, the defendant Hunt claimed that the fifty-six acre piece was chargeable with its proportion of the loan mortgage, and that Quinn, representing that piece, had agreed with Hunt to be present at the sale and contribute its share toward the payment of the mortgage. At the time of the sale Quinn was not present. The defendant Hunt, together with Charles I. Hunt, who acted for the owners of the sixteen acres deeded to George W. Hunt in 1868, and defendant Frank L. Cuddeback, who held a subsequent mortgage on the fifty-six acres, raised the money, which was paid to the loan commissioners on the sale, each contributing according to the valuation of their respective parcels. There was evidence tending to show that the sale of the fifty-six acres first was not by the request of the defendant Hunt, but at the instance of one of the commissioners, he being misled by an error in a search.

It is in effect found that there was no fraud or conspiracy on the part of any of the defendants, and there is evidence sufficient to sustain this view of the case. So far, therefore, as the plaintiff seeks to overturn the judgment in the case of *Jenks* v. *Quinn*, by reason of such alleged fraud or conspiracy, the present action has no basis.

But the plaintiff claims that an essential circumstance in the determination of the case of *Jenks* v. *Quinn* was the absence of a finding that Frank B. Jenks had actual notice of the covenant in the deed from Daniel to John Curtin, and that in the present case he has shown the fact of such actual notice. The evidence, however, on that subject is contradictory, for Jenks testifies that he never had any actual notice of the covenant of Daniel Curtin. Be that as it may, the issue as to such notice was fully raised in the former case,

and Quinn had full opportunity to try that issue. No good reason is presented for trying it over again in this case, within the well-settled rule on that subject. In *Mayor, etc., of N. Y.* v. *Brady* (115 N. Y. 599) it was held, as summarized in the head note, that "No court has authority to vacate and set aside a judgment of a court of co-ordinate jurisdiction upon the ground that the contract upon which it was based was fraudulently obtained, or that there had not been an honest and fair performance thereof, in the absence of proof that the defendant in the action wherein the judgment was obtained was prevented by some act or contrivance of the plaintiff, or by some accident unmixed with negligence of himself or his agents, from prosecuting his defense therein.

"The fraud which will authorize one court in a collateral proceeding to revise the judgment of another court is a fraud practiced in the procurement or concoction of the judgment, by which the defendant was prevented from availing himself of some defense.

"Ignorance of facts constituting a defense does not excuse the omission of a party to make it, or entitle him to the aid of equity, unless it can be shown he could not have acquired the information by diligent and careful labor in preparing the cause for trial."

In view of the law as thus laid down, we are of the opinion that the trial court did not err in holding that no sufficient reason existed for setting aside the judgments in *Jenks* v. *Quinn* as invalid.

Assuming those judgments to be valid, is it shown that the court erred in refusing to set aside the foreclosure sale? The plaintiff, by reason of sickness, was unable to attend the sale, but he took no steps to have any one else appear for him. He knew immediately thereafter that the fifty-six acres had been sold, and that his liability on the warranty would be enforced, and still he took no steps to set aside the sale until four years afterwards, and until, as the trial court finds, the title to both parcels had passed to purchasers in good faith for value, without notice of plaintiff's equities. The plaintiff says that he did not know, until just before the commencement of this suit, in March, 1892, that the funds to pay the bid on the sale were raised by contribution from the owners of the other pieces in association with the purchaser Cuddeback. Still, for aught that appears, he might readily at any time after the sale, by reasonable inquiry, have found out all about it. He knew from the start the main fact,

which was that the fifty-six acres had been sold, without right as he claimed. Instead of attacking the sale he elected to defend the suit on his warranty.

But the plaintiff claims that the purchasers under William D. Hunt are chargeable with knowledge of the existence of the loan mortgage and of the covenant of Daniel Curtin. To this it is replied that Hunt held under a sale upon the mortgage given to Pardee, which was in renewal or substitution for a purchase-money mortgage that was prior to Daniel Curtin's covenant, and that equitably, therefore, Hunt's title was not subject to that covenant. It is also suggested that the deed from Daniel to John Curtin, in which was the covenant referred to, was not a link in the title of the seventy-nine acres, and so the doctrine of constructive notice does not apply. (*Acer* v. *Westcott,* 46 N. Y. 384.) The covenant was not referred to in the deed from John to Daniel. There was proof that the purchaser from Hunt, the defendant Childs, had no actual notice of the covenant of Daniel. If there was constructive notice, still he had a right to believe that the sale was legal, as it was finally decided to be, and that it operated to discharge the mortgage. He knew that his grantor advanced his proportion, and he was informed that the other owners had agreed to pay the balance. The trial court was, we think, justified in its conclusion that Childs and his subsequent grantees, the defendants Sweeney, were purchasers in good faith for value and without notice of plaintiff's equities. There is also evidence tending to show that the present owner of the fifty-six acres, the defendant Anderson, purchased in good faith without any knowledge or information that the plaintiff claimed that the sale was, as to the purchaser, invalid.

As the case stands we cannot properly say that the court erred in holding that the plaintiff was not entitled to equitable relief. It is not a case where there has been no change in the situation as in the case cited of *Vilas* v. *P. & M. R. R. Co.* (123 N. Y. 440).

It is argued on the part of the appellant that the amount of the recovery in the warranty suit was inequitably large, and that relief should be given here. On the contrary, we must assume that the amount there allowed was correct. All the facts in regard to that subject were before the court, or the defendant there had full opportunity to present them. In fact, practically all the material facts

did appear, and the conclusion there arrived at cannot be reviewed here.

But the plaintiff claims that in this action he should recover against some of the defendants damages for the improper sale of the fifty-six acres, either on the ground of fraud and conspiracy or in accordance with a suggestion to be found in the opinion delivered in *Jenks* v. *Quinn* in the Court of Appeals (137 N. Y. 223). As no fraud or conspiracy is found, relief cannot be given on that basis. In the opinion in the Court of Appeals it is said: "The covenant of Daniel Curtin to pay the mortgage charged him and his land with its payment. If the same obligation devolved upon his grantee and the benefit of it passed to the defendant, then these grantees may be liable to him upon the facts adjudged," citing the case of *Wilcox* v. *Campbell* (106 N. Y. 325). In that case a purchaser of a portion of mortgaged premises, who assumed and agreed to pay as a part of the purchase price the whole mortgage, was held liable to respond in damages to the grantee of the balance of the premises for his failure to pay the mortgage and the consequent sale of the whole property. The doctrine of principal and surety was applied.

Daniel Curtin is not a party to this action. In the transfer to William D. Hunt no personal liability was imposed upon him to pay the mortgage in question, nor was there upon his grantees. So that the rule laid down in the *Wilcox* case and the suggestion in *Jenks* v. *Quinn* would not seem to apply. Besides, the plaintiff has not yet paid anything on his liability. (*Halsey* v. *Reed*, 9 Paige, 445.) The judgment against him is not proof that the debt is paid or will be. (2 Sedgwick on Dam. [8th ed.] § 802.)

We have thus considered the main questions in the case, and all that seem to call for discussion, and we find no ground upon which we can properly base a reversal. It follows that the judgment must be affirmed.

HARDIN, P. J., and MARTIN, J., concurred.

Judgment affirmed, with costs.