# CASES

## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF MINNESOTA.

ALBERT H. LINDEKE and Others v. McARTHUR'S, INCORPORATED.[1]

February 13, 1914.

Nos. 18,351—(225).

**Construction of lease — rent.**

    1. A lease construed to provide for a minimum yearly rent of $7,500.

**Recovery of rent.**

    2. The lease having terminated before the expiration of a year, by reason of the destruction of the leased premises, the lessor was entitled to recover a proportionate part of the yearly rent for the period of the lessee's occupancy.

    McArthur's Shoe Store, Incorporated, filed its petition and claim in the above entitled action, then pending in the district

[1] Reported in 145 N. W. 399.

Note. — As to the rights and liabilities of a tenant on destruction of leased building, see note in 22 L.R.A. 613. And on the question of destruction of premises as affecting rent paid or payable in advance, see note in 33 L.R.A. (N.S.) 540.

125 M.—1.

court for Ramsey county, for $2,753.30, for money received by defendant from the sale of merchandise in the department conducted by claimant, and prayed that the court would direct the receivers of defendant to pay over the amount to claimant, or, if the court determined that the above amount was not of the nature of a trust fund, that petitioner might be permitted to file its claim in the same amount. The receivers filed an answer to the claim. The matter of the claim was heard upon stipula.ed facts by Dickson, J., who made findings and ordered judgment against petitioner and in favor of the receivers for the sum of $340.57. From the judgment entered pursuant to the order for judgment, claimant appealed. Affirmed.

*Denegre & McDermott,* for appellant.

*Durment, Moore & Oppenheimer,* for respondent.

HOLT, J.

The appeal in this case turns upon the proper construction of a lease in respect to the amount of rent due, the floor space leased having been destroyed, before the expiration of the term, by a fire. The court having decided the case against the lessee's contention, it appeals from the judgment.

Prior to December 30, 1911, McArthur's, Incorporated, a corporation, was conducting a department store in buildings leased by it in St. Paul, and had sublet to another corporation floor space, wherein a shoe department had been carried on. A change was desired and on the last-named date the Freeman-Patterson Shoe Co. entered into a three year written lease with the McArthur's, Incorporated, for the shoe department space, being the first floor of building No. 104 East Seventh street, wherein to conduct the same business. The Freeman-Patterson Co. thereafter transferred the lease to the McArthur Shoe Store, a corporation, hereinafter referred to as lessee. The lease contained a stipulation that rent should not begin to run until the party who had previously conducted the shoe department vacated. This took place February 5, 1912. On December 11, 1912, a fire occurred through no fault of either party. The premises were rendered untenantable, and by reason thereof the

parties agreed that the lease terminated as of that date. Subsequent to the fire this action was brought by creditors against the McArthur's, Incorporated, the lessor in question, and receivers were appointed. The McArthur Shoe Store came into the proceeding, asking to have a claim allowed against the receivers, on account of moneys received by the lessor under the terms of the lease and not paid over to the lessee. The receivers counterclaimed, contending that the amount paid by the lessee was not sufficient to pay the rent due at the termination of the lease, and asked judgment for the balance, which was granted. The clauses of the lease which relate to the rent read:

"In consideration of the above the said second party hereto is to take from said first party and to use the space above described for the term and purposes above stated and to pay the said first party, as rent and compensation for such services and material above mentioned, an amount of money which shall be equal to ten (10) per cent of the gross receipts of said shoe department from the date hereof to the expiration of this lease.

"Said second party agrees and guarantees that the gross sales of said department shall be at least the sum of Seventy-five Thousand ($75,000) Dollars for each year of this agreement and does further agree that if the gross sales fall below said guaranteed amount, it will nevertheless pay rental, etc., at the rate of ten (10) per cent upon the guaranteed amount for the year or years in which said sales fail to reach said guaranteed amount, said payments to be made at the end of each yearly period from the date hereof."

From the time possession was held by the lessee, that is from February 5, 1912, until the fire the eleventh of December following, the gross receipts of the lessee from sales were $32,661.35, and appellant's position is that the rent could not be more than 10 per cent thereof, whereas the lessor contends that the rent was a proportion of $7,500, the minimum yearly rent, or $6,466.35.

The court held that the lease stipulated for a minimum yearly rent of $7,500, and on that basis calculated the rent for the time the lease had run. We agree with that ruling. Although the word guarantee is used in the lease, it is plain appellant did not thereby

assume a collateral or secondary liability merely, but the language used with reference to its business was intended to fix the minimum rent to be paid. The provision that a yearly accounting should be had is merely to designate the time and method of paying the fixed minimum rate. From other conditions in the lease, it appears that the lessee was to turn over to the lessor all receipts from sales as made. Certain expenses the lessor was authorized to make and pay out for the lessee, and, in addition, to retain and apply weekly 10 per cent of the gross amount so received upon the rent. At the end of the year, if the amount so retained was less than $7,500, the lessee was to pay the difference. Clearly it was not contemplated that, as a condition to receiving rent at the rate of $7,500 per year, the lessee must have had a year's undisturbed possession, for the very first year the payment of the deficit, if any, between 10 per cent of the sales and the minimum yearly rental was to be made on December 30, while occupancy or possession dated back only to the fifth of the preceding February.

Another matter, which lends support to the view that the rate of rent at $7,500 per year was not contingent upon a full year's occupancy, is the fact that the lessor was itself a lessee of the premises and, by a separate lease, of an adjacent building, in which it carried on its business, and in the lease here in question is a provision that it should terminate, in case either of the said leases under which this lessor held were terminated. It cannot well be maintained that the parties contemplated that the stipulation of a minimum yearly rent of $7,500 should be of no effect, if a termination of the tenancy occurred through the act of a third party a few days prior to December 30 of any year of the term.

It is also provided in the lease that, if either party violates the terms of the lease, the other party may terminate the contract upon 60 days' notice. Under appellant's construction, there would be an inducement for the lessee to violate its covenants, for by so doing it could escape payment of more rent than 10 per cent of its gross sales, if the violations were so injurious to the lessor that the latter had no other alternative than termination by notice before the year was up. We think the true construction of the lease is that the

agreed rent was $7,500 per year, unless the gross receipts of the lessee's sales exceeded $75,000, in which event 10 per cent of the excess should be added to the $7,500. A case very much in point is Shartenberg v. Ellbey, 27 R. I. 414, 62 Atl. 979.

Appellant also contends that, even if the trial court's construction of the lease be upheld, no apportionment can be made in case of a termination of the lease in the manner here occurring prior to the end of the rental year. It is conceded that the fire rendered occupancy impossible. Section 6810, G. S. 1913, was undoubtedly intended to relieve a tenant from the harshness of the common-law rule which exacted rent, although the buildings, the use of which might have constituted the sole object of the tenant's contract, were without his fault destroyed. The provision is that "the lessee or occupant of any building which, without fault or neglect on his part, is destroyed, or is so injured by the elements or any other cause as to be untenantable or unfit for occupancy, is not liable thereafter to pay rent to the lessor or owner thereof, unless otherwise expressly provided by written agreement; and the lessee or occupant may thereupon quit and surrender possession of such premises." This statute by implication requires an apportionment of the rent for the time the premises were occupied by the tenant. When the fire destroys the leased premises, the statute permits the tenant to end the term, but, if he does, the rent due must be adjusted at the rate stipulated in the lease. We think this is in line with the decision in Fink v. Weinholzer, 109 Minn. 381, 123 N. W. 931, and also with Wilder v. Peabody, 37 Minn. 248, 33 N. W. 852, where in an assignment proceeding rent was apportioned up to the date of the assignment.

Moreover, this lease was not of land with a building thereon, but of a floor in a building. The destruction of the building left nothing of the subject-matter of the lease. In such cases rent may be apportioned. Graves v. Berdan, 26 N. Y. 498. This is also recognized in Lieberthal v. Montgomery, 121 Mich. 369, 80 N. W. 115, and Rich v. Smith, 121 Mass. 328.

It is true, under a statute like ours, the courts in Craig v. Butler, 83 Hun, 286, 34 N. Y. Supp. 963, 156 N. Y. 672, 50 N. E. 962,

allowed a recovery of rent payable in advance and due on the very day the fire destroyed the building. The same rule is applied in Felix v. Griffiths, 56 Oh. St. 39, 45 N. E. 1092. The statute, being in derogation of the common law, is construed rather strictly against the tenant. The same is the case in Harvey v. Weisbaum, 159 Cal. 265, 113 Pac. 656, 33 L.R.A.(N.S.) 540, Ann. Cas. 1912B, 1115, where the right to recover back rent, paid in advance for rooms in a building entirely destroyed in the San Francisco earthquake, was denied. The court places its decision on the ground that the lease stipulated for payment in advance; when payment was made, the contract as to that item was executed, and the court did not feel called upon to make a new provision for the parties.

But it does not necessarily follow, because the tenant cannot be relieved in so far as the rent has become due, or has been paid prior to termination of the lease by destruction of the premises, that, when the statute gives the tenant the option to surrender possession and terminate the tenancy in such case, and he avails himself thereof, he is thereby also absolved from paying for the use and occupation during the time he remained in possession. And it may be added that Chief Justice Parker enters a vigorous dissent in Craig v. Butler, supra. In Carley v. Liberty Hat Mfg. Co. 81 N. J. L. 502, 79 Atl. 447, 33 L.R.A.(N.S.) 545, the court, construing the rights of the landlord and tenant under a statute worded differently from ours, to be sure, but essentially to the same purpose, permits a pro rata recovery by the tenant of rent paid in advance, in case the premises are destroyed prior to the expiration of the period for which such rent was paid. Such is also the holding in Porter v. Tull, 6 Wash. 408, 33 Pac. 965, 22 L.R.A. 613, 36 Am. St. 172.

In our opinion appellant was liable to pay rent for the period of occupancy under the lease at the rate of $7,500 per annum.

Judgment affirmed.